## Chesapeake & Ohio Railway Co. v. Lang's Admx.

(Decided January 17, 1911.)

### Appeal from Mason Circuit Court.

1. Railroads—Action for Personal Injuries—Failure to Give Signals —Evidence—(See 135 Ky. Repts. page 76, for opinion on First Appeal).—In this action for damages for the death of appellee's intestate who was killed by one of appellant's trains, the evidence considered and held that the failure to give the signals was established by the weight of the evidence, and also that the jury had safe ground for concluding that the train could have been stopped, after the engineer first saw the deceased, in time to have prevented it from striking him.

2. Same—Denial of Engineer—Contradictory Evidence With Reference to Stopping Train.—Though the engineer testified that he could not have stopped the train in time to have prevented killing deceased, appellee had the right to prove by other witnesses that the point in which he, in testifying, admitted he first saw decedent, was a sufficient distance from the place where he was killed to have enabled the engineer to realize his peril and by the exercise of ordinary care, prevent the train from striking him.

2. Instructions—Appellant Estopped to Complain of Them.—The instructions conforming in every respect to the instructions directed on the former appeal to be given, and the evidence being substantially the same on both trials, the appellant is estopped to complain of the instructions on this appeal.

WORTHINGTON, COCHRAN & BROWNING for appellant.

THOS. D. SLATTERY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is the second appeal in this case; the opinion of this court on the first appeal being reported in 135 Kentucky Report, at page 76. On each of the two trials in the court below appellee recovered a verdict and judgment for $2,000 in damages.

The facts being elaborately set forth in the opinion in the former appeal, it is deemed unnecessary to restate them further than to say that appellee's intestate, A. A. Lang, a track walker in appellant's employ, was struck and killed by one of its passenger trains near the end of a trestle, while returning from the performance of duties appertaining to his employment.

Whether at the time of his collision with the train, appellee's intestate was upon a railroad tricycle which he customarily rode in inspecting appellant's track, or was trying to remove it from the track out of the way of the approaching train, does not clearly appear from the evidence; but appellee's evidence conduced to prove that the train could have been stopped in a distance of 400 or 500 feet; that for at least 800 feet there was nothing on or near the track between the place where the intestate was killed and the approaching train that obstructed the view of one maintaining a lookout from its locomotive; and that the train gave no signal with its whistle or bell until after it struck the intestate. Proof of the failure of those in charge of the train to have given any signal of its approach was furnished by the testimony of several section hands in appellant's employ who were at work close to the place of the accident and three other persons who saw the accident. So, it may fairly be said that the failure to give the signals was established by the weight of the evidence.

On the other hand, appellant's engineer in charge of the locomotive testified, that he did not see appellee's intestate until within 400 or 500 feet of him; that upon seeing him he at once sounded the alarm whistle, reversed the engine and applied the emergency brakes to stop the train before it reached the intestate, but was unable to do so. As to the sounding of the alarm whistle and efforts to stop the train, the engineer was corroborated by the fireman and others of the train crew. The engineer and fireman, though the latter was shoveling coal in the locomotive furnace when the alarm whistle was sounded, further testified that the intestate before being struck by the train had gotten off the tricycle, and

but for his attempt to remove it from the track, would have escaped injury. The engineer's testimony was in some respects inconsistent, for notwithstanding his statement that he did not see Lang until within 400 or 500 feet of him, he further said in reply to a particularly direct inquiry on that point, that he was two or three rail lengths west of the distance signalling place when he first saw him. The distance signalling point referred to is the place for sounding the whistle for the trestle, and, as according to the evidence, the place for giving the distance signal is 780 feet from the place of the accident and the length of three rails ninety-nine feet, it would seem that the engineer instead of being in 400 or 500 feet of Lang when he first saw him, was in about 700 feet of him, and if so, and the train, as much of the evidence tended to show, could have been stopped in 400 or 500 feet, the jury had safe ground for concluding that it could have been stopped in time to have prevented it from striking Lang.

It is insisted for appellant that the circuit court erred on the last trial in permitting the introduction of evidence to show the distance from the trestle that a person situated as was appellee's intestate when killed, could be seen by one maintaining a lookout on the track in that direction from a locomotive approaching as did the one by which he was killed. This evidence was introduced on the first trial without objection from appellant, nor did it complain of it to this court on the former appeal.

In Strongfield v. Louisville Railway Co., 113 S. W., we held that in such a state of case, the parties claiming to have been injured by the introduction in a subsequent trial of such evidence is estopped to complain of it on a second appeal of the case to this court. Besides, in our opinion, the evidence was not incompetent. It is true, as stated in the former opinion, that appellee's intestate was not a trespasser in riding upon the railroad track on his tricycle, but it was incumbent upon him to keep a lookout for trains and get out of their way. It is equally true that appellant's engineer was not required to anticipate the presence of appellee's intestate on the track and owed him no duty to keep a lookout for him at that place, but appellant was nevertheless responsible for his death, if the engineer saw his peril in time to have prevented the train from striking him and negligently failed to do so, whether such negligence consisted in a failure to sound the whistle to warn him from

the track or failure to stop the train. But the engineer testified that he was keeping a lookout on the track ahead of the train from the time the locomotive rounded the curve until it struck the decedent, and if so the lookout was maintained by him while the locomotive ran a distance of 1,420 feet; for, according to the testimony of the witness, Anderson, it was that far from the point where the train reached the straight track, after rounding the curve, to where the decedent was killed. It is true the engineer further testified that he did not see the decedent until within 400 or 500 feet of him, but appellee was not bound by that statement, and in view of the admission of the engineer that he maintained a lookout from the time of rounding the curve, and that he first saw the decedent about two or three rail lengths west of the distance signalling point, it was competent for appellee to prove that the distance from the curve to the place of the accident was 1,420 feet, and from the distance signalling place to the place of the accident was 780 feet; that the track between these places was unobstructed and that a person at the place of the accident could be plainly seen, both from the curve and distance signalling place. In other words, notwithstanding the engineer's denial that he could have stopped the train in time to have prevented the decedent's death, appellee had the right to prove by other witnesses that the point at which he in testifying, admitted he first saw the decedent, was at a sufficient distance from the place where he was killed to have enabled the engineer, to realize his peril, and by the exercise of ordinary care, prevent the train from striking him.

It is further insisted for appellant that the trial court erred in instructing the jury and in refusing instructions asked by it. We fail to find any merit in this contention. The judgment first complained of was reversed on the former appeal because of error in the instructions. The opinion specifically set forth the errors contained therein and as specifically directed how and in what particulars they should be corrected on the second trial, and our examination of the instructions given on that trial and now objected to, convinces us that they conform in every respect to the directions contained in the opinion rendered by this court on the former appeal; in view of which, and the further fact that the evidence was substantially the same on both trials, the appellant is estopped to complain of them on this appeal. L. & N. R. R. Co. v. Molley's Admr., 32 Ky. Law Rep., 745, 107 S.

W., 217; Lexington Railway Co. v. Woodward, 118 S. W., 965; L. & N. R. R. Co. v. O'Nan's Admr, 119 S. W., 1192; W. H. White & Sons v. Ayer & Lord Tie Co., 116 S. W., 349. No reason is perceived for appellant's complaint that the trial court erred in refusing to give certain instructions asked by it. There were two good reasons for such refusal, first: The offered instructions were open to the objection that they singled out and gave undue emphasis to a part of the facts relevant to the issues made by the pleadings and proof; and second: They were wholly unnecessary because what they contained was included in and better expressed by the instructions given by the trial court as directed by the opinion of this court.

Being satisfied that no error was committed by the trial court that can be said to have prejudiced appellant's rights, the judgment is affirmed.