## Lesser v. Jefferson Fire Insurance Co.
## Lesser v. Insurance Co. of North America.
## Lesser v. Niagara Fire Insurance Co. of New York.

(Decided January 19, 1911.)

## Appeals from Henderson Circuit Court.

1. In an action on an insurance policy, the defense being that the assured negligently or willfully set the house afire, there is not a failure of proof where there is no direct evidence that he set it afire. This may be inferred from circumstances, and the jury's verdict will not be disturbed, where the circumstances are not satisfactorily accounted for.

2. When a mistake is made in a deposition the party complaining must move for its correction when discovered. He can not take the chances of a verdict and complain if the verdict is against him.

3.  Statements of the plaintiff may be proved as admissions by him.
    The court should not caution the jury that such statements could
    only be considered by them for the purpose of discrediting his tes-
    timony.

VANCE & HEÏLBRONNER for appellant.

DORSEY & STANLEY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Af-
firming.

H. J. Lesser was running a store at Dixon, Kentucky,
and took out policies with appellees insuring his goods.
The store burned and he brought this suit to recover on
the policies.  They defended on the ground that he had
negligently or wilfully set fire to the store and so burned
it.  On a trial of the case before a jury the court instruct-
ed the jury in substance that they should find for the
plaintiff unless they believed from the evidence that the
fire and loss of the merchandise in question was caused,
suffered or procured by the voluntary, fraudulent, cor-
rupt or wrongful act of the plaintiff, and if they so be-
lieved they should find for the defendant. The jury found
for the defendants, and the plaintiff appeals.

H. J. Lesser was a member of the firm of Lesser and
Company which failed.  At the bankrupt sale, Simon Les-
ser, the father of H. J. Lesser, bought the goods for
$4,300.00.  The stock of goods had previously been the
property in part of Solomon Oberdorfer, who had gotten
a part of it at least from one Henrichson, and Henrichson
had gotten it from a Miss Monheimer.  When Miss Mon-
heimer failed Henrichson got them; when he failed Ober-
dorfer got them; and when Oberdorfer failed, Lesser and
Company got them.  Oberdorfer was the father-in-law
of H. J. Lesser, and Miss Monheimer was his wife's aunt.
The sale to Simon Lesser included the fixtures which
were worth about $225.00.  After his purchase Solomon
Oberdorfer sold the stock as his agent by retail until the
following spring, when Solomon Lesser sold the remain-
ing stock less the fixtures to H. J. Lesser for $2,490.00.
He thereupon moved the stock of goods from Henderson,
to Dixon; he and Oberdorfer took charge of it, selling the
goods as advertised at reduced prices.  After they had
been there some time in April they advertised what they

called a manslaughter sale for 15 days, at which, according to the advertisements, the goods would be sold without regard to cost.   After this manslaughter sale they continued their bankrupt sale of goods until in July when they had a mercantile agency to advertise and conduct another manslaughter sale for 15 days. After the close of this sale they went on selling as before by retail, and made several attempts to sell the remainder of the stock as a whole, but had not disposed of it on September 29, when the house burned down.   When the store burned according to the deposits in bank they had sold goods to the amount of $3,433.24.   There was an insurance on the stock for $3,500.   It is insisted for the insurance companies that the stock of goods on hand at the fire was not worth more than $1,400.00, if that.   Lesser produced on the trial an inventory taken shortly before the fire which showed that he had in the store goods of the value of $6,700.00.   According to the proof for him the stock bought by Simon Lesser amounted to something over $11,000.00, and the stock which Simon Lesser sold to him amounted to about $10,000.00.   He also testified that he had bought about $1,200.00 worth of goods and put them into the stock while at Dixon.   On the other hand a number of people who went through the stock with the view to purchasing testified that it was of small value old, shop worn and worm-eaten.   Lesser produced no bills showing the goods that he had purchased and in view of all the testimony the jury were warranted in concluding that the stock on hand at the fire was worth only a small part of what it was insured for.

The circumstances of the fire are these:   They had been running the store during the day and had closed it about 6 o'clock.   It was cool weather and they had had a fire in the store during the day.   When they closed up there was no fire there or practically none.   As far as the evidence shows nobody was in the store after this except Lesser himself.   About 9 o'clock he was at a barber shop with three other men not far from the store, having with him a bottle of whiskey.   They closed up the barber shop about 10:30.   The other men went home and Lesser left them saying he would go over to the store and light up.   They went on home and about 11 o'clock, the town was aroused with an alarm of fire.   It was a large fire, several other buildings were involved.   The court house bell, the church bells, and other bells about town were rung;

pistols were fired off and there was a great commotion
in the vicinity of the fire. Lesser's room was not far
from the store, and he not being seen in the crowd, appre-
hension arose that he was in the store, and so persons
went to his room and tried to arouse him; but all the re-
sponse that they could get from him was a grunt. He did
not appear until morning, when for the first time he says
he learned of the fire. He testified that he had drunk the
bottle of whiskey and was drunk, but the persons who left
him in the street say that he was sober when they left him.
The inventory which he had taken a few days before was
at his room, and not in the store. Why he took this in-
ventory, why he had it in his room, and why he acted as
he did on the night in question are matters on which his
evidence is far from satisfactory.

It is earnestly insisted there is no proof that he set the
house afire. But a matter of this sort can rarely be
proved except by circumstances. Our rule is that the
question is for the jury if there is any evidence, and we
cannot say that there was no evidence here or that in
view of Lesser's own testimony on the trial, and all the
circumstances the verdict of the jury should be disturbed.

It is earnestly insisted that a new trial should be
granted because the stenographer in reducing to writing
the answer of one witness in a deposition used the word
"he" in place of the word "they," and thus made a state-
ment which was made by bystanders to seem to be a state-
ment made by H. J. Lesser. We have read the whole
deposition with care, and we conclude that the other
answers of the witness showed what was meant and that
the jury could not well have misunderstood the deposition
as a whole. But aside from this the question arose on
the trial, and it was incumbent on the plaintiff then and
there to make his application for a correction of the depo-
sition. He could not go through the trial, and take his
chance of getting a verdict and when he was defeated, ask
a new trial on this ground. He knew how the deposition
read when it was read to the jury, and if he failed to de-
tect it then, he certainly knew it during the progress of
the trial. This is admitted, and when the mistake was
discovered, it was incumbent on him then to apply for
its correction. (Drake v. Drake, 107 Ky. 32.)

It is also insisted that the court allowed certain state-
ments made by Lesser to be shown and did not caution

the jury that they could only be considered for the purpose of discrediting his testimony as a witness; but Lesser was the plaintiff himself, and his statements out of court might be shown as admissions of the fact made by him. On the whole case we see no reason for disturbing the verdict of the jury.

Judgment affirmed.