## Louisville & Nashville Railroad Company v. Stewart's Administratrix.

(Decided March 26, 1915.)

### Appeal from Warren Circuit Court.

1. Appeal and Error—Determination and Disposition of Cause—Mandate and Proceedings in Lower Court—Effect in Lower Court of Decision of Appellate Court—As Law of the Case.—In this case, on the former appeal the appellate court held that the conductor was negligent and that the brakeman was not; but the conductor did not testify upon the first trial. Upon the second trial, the conductor testified, and a different state of facts was presented. The opinion on the former appeal was therefore not conclusive as the law of the case upon the second trial.

2. Trial—Course and Conduct of Trial in General—Presence of Parties and Relatives.—In an action under the Federal Employers' Liability Act to recover damages for the negligent killing of the husband and father, it was not error to refuse to exclude from the court-room a child of decedent, six years of age and feeble-minded.

3. Trial—Verdict—Required Number of Jurors in Action Under Federal Employers' Liability Act.—It is not required that the verdict in an action in the State courts under the Federal Employers' Liability Act should be agreed upon by all of the jury; nine or more jurors may make a verdict.

4. Courts—Concurrent Jurisdiction—State Courts and United States Courts.—In conferring concurrent jurisdiction upon State courts in actions brought under the Federal Employers' Liability Act, Congress imposed no restrictions as to procedure; and although the unanimous verdict and preponderance of evidence rules control in the Federal Courts, the procedure in the State courts remains unchanged.

5. Constitutional Law—Validity of Statutory Provisions—Amendment to Federal Employers' Liability Act.—The amendment of the Federal Employers' Liability Act, of 1910, conferring concurrent jurisdiction upon State courts to try the actions thereunder created, by preventing the removal of such actions, is not in contravention of the Seventh Amendment of the Federal Constitution preserving the right to jury trial in common law actions.

SIMS & RODES and BENJAMIN D. WARFIELD for appellant.

WRIGHT & McELROY, HAZELRIGG & HAZELRIGG and B. F. PROCTOR for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

William H. Stewart, a locomotive engineer in the service of the Louisville & Nashville Railroad Company and engaged in interstate commerce, was injured at Cumberland City, Tenn., on September 5, 1908, and died on September 27, 1908, as the result of his injuries.

His widow was appointed administratrix of the estate, and she instituted this action in the Warren Circuit Court to recover damages for the negligent killing of her husband and intestate, for the benefit of herself and four children.

There was a verdict and judgment in her favor, which upon appeal was reversed. See 156 Ky., 550, 157 Ky., 642; 161 S. W., 557, 163 S. W., 755.

Upon the return of the case to the circuit court, there was a second trial, which resulted in a verdict and judgment in plaintiff's favor in the sum of $11,885, apportioned as follows: To the widow and the three older children, $2,472 each, and to the youngest child, $4,469. The railroad company again appeals.

Stewart was the engineer in charge of the locomotive of a freight train proceeding northward on the day mentioned. Jones was conductor of the train, and Hill, rear brakeman. On reaching Cumberland City, they met a south-bound freight train, which was standing on the main line just north of the switch at the south end of the passing track. Stewart's train entered upon this passing track at the south switch thereof and proceeded north thereon, pushing ahead of the locomotive several cars which were found standing on the passing track. On reaching the north end of the passing track, it was found that the rear end of the train was not yet in the clear at the south end of the passing track, and in order to let the south-bound train, which was standing on the main line proceed, they opened the switch at the north end of the passing track and pulled the front end of the train out onto the main line. After this was done and the south-bound freight train had gone, it was necessary to arrange for a south-bound passenger train which was approaching Cumberland City. Jones, the conductor, gave to Stewart, the engineer, a signal to back up. This was done while the front end of the train was out on the main line, the purpose of backing the train being to clear the north end of the passing track so the passenger train could pass on the main line. While the train was

backing, Hill, the rear brakeman, applied the air-brakes suddenly by opening an angle-cock, causing Stewart's head to strike a portion of the cab, whereby he sustained the injuries from which it was claimed his death resulted.

On the first trial of the case, the testimony of the conductor, Jones was not available, but the rear brakeman testified; and in the opinion on the former appeal based upon the evidence as it then appeared, the court held that there was sufficient evidence of negligence upon the part of the conductor to take the case to the jury; but that Hill, the rear brakeman, was not negligent.

The conclusions stated in the former opinion based upon the evidence then appearing, were that under the rules the rear brakeman properly locked the south switch after his train had passed onto the passing track; that he properly went toward the front of the train for the purpose of cutting a crossing which was blocked by the train; and that when the train began to back, finding that he did not have time to reach the south switch and throw it, he properly stopped the train by opening the angle-cock. And, that as to the conductor, he gave the order to back the train when he knew or should have known that the switch was locked, that the rear brakeman had to attend to the cutting of the blocked crossing and was therefore absent from the switch, that his train was too long to be in the clear at both ends of the passing track at the same time, and that when he backed it far enough to be in the clear at the north end, it would run out onto the main line at the south end, and that therefore the conductor was negligent, or at least there was sufficient evidence of negligence on his part to take the case to the jury.

On the second trial, however, Jones, the conductor, was present and testified. and a different state of facts was presented.

Jones testified that the length of the passing track was thirty-two to thirty-four car lengths; that he had thirty-three or thirty-four cars in his train; that when he gave the signal to back he could see both ends of his train; that it was not his intention when he gave the signal to back, to leave the siding, that is, for the rear end of the train to pass out onto the main line; that in his judgment he could have backed the train far enough to have cleared the main line at the north end of the sid-

ing without backing the caboose of the train as far as the south switch thereof. It is shown in the record that the train could have backed something over a hundred feet after the caboose would reach the point where it would foul the main line, before coming to the switch itself; and that there was approximately forty feet of "slack" in a train of that length which could be taken up. In addition, it is not shown how far out on the main line at the north switch the train was; so that under the evidence as presented on the last trial it is not beyond the possibilities that the conductor could have cleared the main line at the north switch without backing the caboose over the closed south switch.

But, it is to be noted that the conductor testified that he had to "saw by" the south-bound freight train which they met at Cumberland City; and if this was absolutely necessary, that is, if his train was so long that the front end of it had to be run out onto the main line at the north end of the passing track in order that the rear end of the train at the south end of the passing track would clear the main line, then it would necessarily follow that to clear the main line at the north end of the passing track, the rear end of the train would have to be backed out onto the main line at the south end thereof. The record, however, does not conclusively establish such to be the fact. In pulling his train up on the passing track, it was pulled far enough to clear the first crossing to the north of the south switch, and possibly farther—the evidence is not clear on this point—but it may not have been very far out on the main line at the north end of the passing track, and its length may have been such that it could have all been placed on the passing track, clearing the main line at the north end, and without the rear end extending past the south switch.

So that the testimony of the conductor presented an entirely different state of facts from those obtaining on the first trial, and upon which the opinion on the former appeal was based; and upon the second trial, there was some evidence of negligence upon the part of Hill, the rear brakeman, in acting too hastily, and in assuming that the purpose of the conductor was to back the rear end of the train over the closed south switch, or that it would be necessary to do so in order to clear the main line at the north switch.

Realizing that the negligence which caused the injuries of the engineer was either that of the conductor

or of the brakeman, depending upon the view-point, the court instructed the jury that if the defendant's agents and employees in charge of its train, or any of them, negligently operated it so as to cause Stewart's injuries, they should find for plaintiff; and also gave an instruction dealing especially with the alleged negligent act of the rear brakeman, Hill, in opening the angle-cock and applying the brakes in that manner.

Of this appellant complains, insisting that as the court held in the opinion on the former appeal that Hill was not negligent, it was error to instruct in regard thereto. But as we have heretofore explained, the evidence in respect of these matters was radically different upon the second trial, and, of course, the instructions vary as the facts vary.

2. Plaintiff administratrix testified for herself upon the trial, and while doing so, held in her lap her youngest child. This child was six years of age, and afflicted in mind. Defendant objected to the exhibition of this child before the jury, and at the conclusion of plaintiff's examination in chief moved the court to discharge the jury and continue the case on account thereof; and it is contended here that the court erred in permitting this child to be exhibited before the jury, and in admitting evidence concerning its mental condition.

Appellant contends that the verdict is excessive at least to the extent of the $1,997 awarded to this child more than to the others, and that this was produced by the exhibition of the child before the jury.

Under the Act, this child was a beneficiary and entitled to participate in the recovery, and the exhibition of the child to the jury resulting from its presence in the court room is not grounds for complaint unless an excessive verdict was thereby induced. We do not think the verdict excessive, either as to the gross award or as to the sum apportioned to the child. The pecuniary loss to it resulting from the negligent killing of the father was necessarily greater than to the other children.

3. It is also contended by appellant that the court erred in giving to the jury an instruction authorizing nine or more of the jury to return a verdict, and in refusing to give to the jury an instruction requested by appellant, requiring that the jury should all agree to a verdict; it being contended by appellant that in trials in the state courts of cases controlled by the Federal Em-

ployers' Liability Act, there must be a unanimous verdict by twelve men, as required by the Seventh Amendment to the Constitution of the United States; and that Congress had not power to grant jurisdiction to try causes of action created by it, upon state courts not so constituted as to satisfy the guarantee of the Seventh Amendment as to jury trials. And it is further contended by appellant that Congress by the Act of April 5, 1910, amending the Federal Employers' Liability Act did not grant jurisdiction to state courts not so constituted as to satisfy the Seventh Amendment, to try causes of action under the Act mentioned.

Since the filing of the appellant's brief herein, this court has considered the above-mentioned contentions and decided them adversely to appellant's claims. Ches. & Ohio Ry. Co. v. Kelly's Admx., 161 Ky., 655; L. & N. R. R. Co. v. Johnson's Admr., 161 Ky., 824.

4. It is also contended by appellant that the trial court erred in refusing to give the instruction requested by it requiring the jury to believe that the plaintiff had established the issues by a preponderance of the evidence before they could find for her. This matter was likewise disposed of in the cases above mentioned.

5. Appellant also contends that the evidence failed to establish that the blow upon the head received by Stewart when Hill opened the angle-cock, resulted in his death. The evidence upon this issue was conflicting but there was sufficient evidence to show that such was the proximate cause of his death. In fact we think it clearly does so and we will not disturb the finding of the jury in respect thereof.

The judgment is affirmed.