### Forestal v. National Surety Company, et al.

(Decided February 17, 1916.)

#### Appeal from Caldwell Circuit Court.

1. Appeal and Error—Setting Aside Verdict.—The finding of a jury will not be reversed unless it is flagrantly against the evidence;

a mere preponderance of the evidence is not sufficient to justify the setting aside a verdict of a jury.

2.  Witnesses—Impeachment.—The general rule that a party may not impeach his own witness, was not violated in this case.

3.  Evidence—Admissions Against Interest.—Statements of the defendant may be proved as admissions by him. The court should not caution the jury that such statements could only be considered by them for the purpose of discrediting his testimony.

4.  Principal and Surety—Action for Assault—Plea of Self-Defense—Upon What Right of Depends.—The right of self-defense does not depend upon the real or the apparent danger as it appeared to the jury, but on the danger as it appeared to the accused at the time he committed the act for which he is tried.

5.  Principal and Surety—Liability of Principal—Instructions.—Where the court properly instructed the jury as to the liability of the principal in a bond, and erroneously instructed as to the liability of the surety, and the jury in a suit against both principal and surety found for the defendants, the plaintiff was not prejudiced by the erroneous instruction as to the surety, since the surety's liability was secondary and conditioned upon the liability of the principal, who was acquitted by the verdict.

MILLER, MILLER & MORSE for appellant.

GEORGE G. HARRALSON and R. W. LISANBY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Affirming.

The appellant, Thomas Forestal, brought this action against the appellee, Wm. Henry Malone and the National Surety Company, surety upon Malone's bond as a policeman of the city of Princeton, seeking to recover damages for an assault committed by Malone in shooting Forestal through his left thigh, breaking the large bone of his leg.

Malone traversed the petition; and, in the second paragraph of his answer, he admitted the shooting, but alleged it was done in self-defense and after Forestal had assaulted him by throwing rocks at him, and had advanced upon him in the dark in a menacing and threatening manner; that he had in good faith, while believing he was in great and imminent danger, shot only in self-defense to repel the assault upon him by Forestal, and that he did no more than what seemed to him to be necessary in defending himself.

The surety company joined in the answer of Malone, but subsequently filed a separate answer, alleging that its joinder in Malone's answer was by mistake.

In its separate answer, the surety company traversed the petition, and further alleged that if Malone shot and wounded Forestal, he was not doing so in his official capacity, but as an individual and in his necessary self-defense, having reasonable grounds to believe, and believing, that Forestal was then and there about to inflict great bodily injury upon him.

The trial resulted in a verdict for the defendants, and Forestal appeals.

The proof shows that Forestal had worked for a short time during the summer in South Dakota; that he then went to Chicago and remained there about a week; that from Chicago he went to Ft. Wayne, Indiana, and remained there a few days; that from Ft. Wayne he went to Centralia, Illinois, where he remained one day, and thence to Evansville, Indiana, where he remained a like period; that from Evansville he went to Louisville, where he remained two or three days, and thence to Princeton, where he arrived in September, on a passenger train that reached Princeton about five o'clock in the evening.

During most of the travels above spoken of, Forestal "beat his way." At Evansville he fell in with John Ward, who accompanied him on his travels from that point to Princeton.

About seven o'clock in the evening after Forestal and Ward had arrived at Princeton, they went to the yards of the Illinois Central Railroad Company and entered an empty box car, where they proposed to spend the night. After removing his shoes and coat, Forestal says he and Ward retired and went to sleep immediately, leaving the sliding door in the side of the car open about two inches. Later in the night, according to Forestal's story, he was awakened by some one knocking on the door, and a light flashing in his face. The man with the light was Malone. He told Forestal and Ward to get out of the car, and be quick about it.

Forestal says that when he and Ward started to get out of the car, Malone had stepped back about ten or twelve feet from the car and across the main track; that when Ward left the car and went up to Malone, Malone kicked him in the pit of the stomach and told him to "beat it"—to get out and run, and that Ward immediately ran down the track.

From what he had seen pass between Malone and Ward, Forestal says he concluded that Malone also

wanted him to leave, so he jumped out of the car and started to run, but before he got very far away, Malone shot him in the thigh, as above indicated. Forestal fell to the ground, and was shortly thereafter carried to the freight office, and thence to the hotel, where he remained for several weeks.

Forestal says that when Malone came up to where he was lying on the ground, after he was shot, Malone admitted he had shot Forestal, and said Forestal had been throwing rocks at him, exhibiting one of the rocks which he held in his hand.

According to Malone's version, when he approached the box car he saw a man standing in the car door, who jumped out of the car and ran up to Malone; that he shoved the man back, put his light in his pocket, and pulled his pistol, whereupon the man (Ward) ran away. Malone says that immediately after Ward ran away a rock brushed by his head and shoulder, and that Forestal then jumped from the car door towards Malone, and as he sprung down he was in a reaching position like he was going for a rock, whereupon Malone shot him. Malone says he fired the shot because he thought he was in danger of great bodily harm, and for the purpose of repelling the assault which was being made upon him.

Malone admits he kicked Ward, or kicked at him, and shoved him back when Ward approached him, and he does not claim that Forestal threw the rock that struck him on the shoulder. Presumably, the rock was thrown by Ward. And, it does not appear precisely where Forestal fell when he was shot—whether he was near the door of the car, as he would have been if Malone's story is true, or whether he was further down the track running away, as he states. Ward did not testify.

1. In the first place, we are urged to reverse the judgment of the lower court upon the ground that the verdict was contrary to the evidence, which it is claimed shows, beyond a doubt, that Malone was not acting in self-defense at the time he shot the appellant. That, however, was a question for the jury, under the conflicting testimony. If Ward and Forestal were assaulting Malone, and he believed he was in great bodily danger, he had the right to protect himself from the assault, and the jury had the right to believe his story rather than the story of Forestal. It being the province of the

jury to pass upon the disputed facts of a case, its verdict will not be disturbed unless it is flagrantly against the evidence. Where there are only two witnesses to the fact in issue, each flatly contradicting the other, it can hardly be said that the verdict is flagrantly against the evidence.

2. It is next insisted that the trial court erred in permitting the defendants to contradict the statement of their witness Winternheimer, in·a material portion of his testimony. Winternheimer had walked down to the place where Forestal lay after he was shot, and testified that Malone said: ''Here is what they threw at me;'' that he had a rock in his hand, and said: ''One threw it at him, and started to run.''

Malone was recalled for the purpose of contradicting Winternheimer's testimony to the effect, as shown by the avowal, that Malone had said he shot Forestal while he was running; but the court sustained the objection and did not permit Malone to contradict his own witness. But it is claimed that the court did permit Jennings and Throgmorton, other witnesses for the defendants, to contradict Winternheimer in this respect, and that in permitting this to be done, the trial court erred.

A careful reading of the testimony shows, however, that there was no contradiction of Winternheimer.

The avowal as to what Malone would testify, erroneously states that Winternheimer testified that Malone had said he shot Forestal while he was running away. But Winternheimer's testimony only shows that one of the boys (which one is not stated) threw a rock at him and then ran; and that nothing was said by Malone about having shot him.

This also appears from Jennings' testimony, which reads as follows:

''Q. I will get you to state whether Mr. Malone there in the presence of yourself and this plaintiff and Winternheimer, and possibly others, made the statement that one of them threw a rock at him and ran, and he shot at him; did he make that statement? (Objected to.)

''By the Court: Was it in the presence of the plaintiff? A. Yes, sir.

''By the Court: You may answer. (Plaintiff excepts.)

''Q. Did Mr. Malone make that statement ? A. Yes, sir.

"Q. Did Mr. Malone make that statement? A. Yes, sir.

"Q. Did Mr. Malone state that he shot at the man that ran? A. Well, no, sir; he said, I think, the little fellow got out of the car and ran, and the other one threw a rock and jumped out of the car, or something like that, and he shot at him.

"Q. Did Mr. Malone state that he shot the man that ran, in that conversation? A. No, sir."

Throgmorton corroborated Jennings, but added nothing new.

The proof shows that Ward was a much smaller man than Forestal, and he is repeatedly referred to in the record as the "little man," or the "little fellow."

Upon a careful reading of the statement attributed to Malone, we see no error in the ruling of the trial court. According to Winternheimer, Malone did not say that Forestal threw the rock at him, or that he shot him while he was running; on the contrary, he is reported to have said that *one of them* threw it at him and started to run; and Jennings testified that Malone said "the little fellow" (Ward) got out of the car and ran, and that the other one (Forestal) jumped out of the car and threw a rock, and that he shot at him. Jennings further says that Malone did not say he shot the man that was running.

It will be seen, therefore, that no witness testified that Malone admitted having shot Forestal while he was running. There was no error in this ruling of the court.

3. In rebuttal, the plaintiff called four witnesses, Rucker, Phelps, Howard and Lucy, who testified to a conversation with Malone some time after the shooting, which tended to contradict him as to the place where he was standing, and what he did at the door of the car when he told the boys to get out of it; and the court, in each instance, told the jury they could consider the testimony only for what bearing it might have upon the credibility of Malone as a witness, and for no other purpose.

It is claimed that this testimony of Rucker and the other witnesses was substantive testimony, and went to the merits of the case, and that it was error for the court to limit its application, as it did. But this testimony in no way directly related to the facts of the shooting; it merely related a subsequent conversation with

Malone as to where he was standing, and at most contradicted his testimony upon that point. This testimony showing an admission against interest, was competent and should not have been limited to credibility. 141 Ky., 670. The ruling was not, however, prejudicial under the facts of this case.

4. Finally, plaintiff complains that the court erred to his prejudice in instructing the jury, particularly in submitting the issue of self-defense.

This was proper, since the issue was made by the pleadings and there was proof to sustain the plea. Indeed, self-defense was Malone's only plea in justification of the shooting; it was his only defense.

It is further insisted, however, that instruction No. 1 improperly limited the force to be used in repelling the assault, by what seemed to Malone to be apparently necessary to repel said assault. It is insisted that instead of authorizing Malone to defend himself by using no more force than seemed reasonably necessary, to him, to repel said assault, it should have authorized him to use no more force than was reasonable or necessary, to repel the assault. In other words, the instruction is criticized because it made Malone, and not the jury, the judge of what was necessary to repel the assault.

This, however, is the instruction authorized in cases of self-defense. The right of self-defense does not depend upon the real or the apparent danger as it appeared to the jury, but on the danger as it appeared to the accused at the time of the shooting. Munday v. Commonwealth, 81 Ky., 233; Ayers v. Commonwealth, 32 Ky. L. R., 1234, 108 S. W., 320.

Plaintiff also offered instruction "B," to the effect that although he assaulted Malone, still if plaintiff had abandoned the assault at the time he was shot, the law was for the plaintiff.

The court, however, properly refused to give this instruction, for the reason that there was no evidence to support it. Forestal denied that he attacked Malone, and neither Forestal nor Malone testified that Forestal attacked Malone and then abandoned the attack before he was shot.

Instruction No. 1 did not authorize the jury to find against the surety company in any state of case, and the third instruction predicated the plaintiff's right to

recover against the surety company only in case Malone was acting in his official capacity as a policeman at the time he shot the plaintiff.

Technically, this was an error, since Malone, the only witness upon the subject, testified that he was acting as a policeman when he shot Forestal. Under this proof the instruction should have placed Malone and his surety under the same liability; but since the jury found for Malone under a proper instruction, and the surety's liability was secondary and conditioned upon Malone's liability, the plaintiff was not prejudiced by the error.

Judgment affirmed.