# Louisville & Nashville Railroad Company and Others v. Benke's Administrator.

(Decided June 8, 1917.)

## Appeal from Campbell Circuit Court.

1. Appeal and Error—Subsequent Appeals.—The opinion of this court upon the first appeal is the law of the case for subsequent trials, where the testimony is not materially different.

2. Torts—Negligence—Pleading.—Under a general charge of negli-gence, the plaintiff in a tort action may prove any specific act of negligence in support of his case; when, however, he specifies the acts of negligence relied on, his proof will be confined to the specification.

3. Railroads—Persons Upon Tracks—Ordinary Care.—A railroad com-pany is required to exercise ordinary care to prevent injury to a person upon its track after it discovered the presence of the person upon the track.

JAMES C. WRIGHT and BENJAMIN D. WARFIELD for appellant L. & N. R. R. Co.

MAXWELL & RAMSEY and MAT HEROLD for appellant P. C. C. & St. L. Ry. Co

HAZELRIGG & HAZELRIGG, L. J. CRAWFORD and H. GUNKEL for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This is the second appeal in this case. Upon the first trial there was a verdict for $10,000.00. On the last trial there was a verdict for plaintiff for $6,000.00; and the defendants again appeal.

In the opinion upon the first appeal, which may be read in 164 Ky. 798, the court examined the facts in great detail, and concluded that the defendants' motion for a directed verdict should have been sustained.

The decedent, Elizabeth Benke, lost her life while endeavoring to cross Saratoga street, at the south side of Eighth street in Newport, immediately in front of one of appellant's engines hauling a train of fifteen loaded cars. When Miss Benke was struck by the en-gine, she was carried from the south line of Eighth street to a point about 100 feet north of the north line of Eighth street. As Eighth street is fifty feet wide, she was carried a total distance of 150 feet before falling from the engine.

Miss Lampe, the principal witness for the plaintiff, speaks of Miss Benke having been struck by the "cowcatcher." The engine was, however, a switch or yard engine, and had the usual low footboard instead of a "cowcatcher," in front.

Upon the first trial the case was tried and submitted to the jury upon the theory that Miss Benke was killed when the car struck her at the south side of Eighth street, and that the collision which was thus the occasion of her death, was brought about by her own negligence.

That this was the theory upon which the first judgment was reversed, clearly appears from the clause of the opinion where the court, in speaking of the failure of the defendants to stop their train within ten feet after the accident, as Foy testified could have been done, used this language: "If the train had been stopped within the distance prescribed by the expert, it does not appear probable that the result would have been different." This, of course, means that the case was tried below, and decided here, upon the theory that Miss Benke had been killed instantly when she was struck by the train.

But, upon the second trial, Miss Lampe testified that after the engine had struck Miss Benke, it carried her a distance of 150 feet, as above stated, while she was alive and sitting upon the cowcatcher or footboard; that when the engine passed Miss Lampe while she was standing at the northwest corner of Eighth and Saratoga streets, Miss Benke was alive and had a terrified look upon her face; and, that she fell from the cowcatcher or footboard at a point about a hundred feet north of Eighth street, and was run over and ground to death by the engine.

Counsel for appellants insist that the evidence upon the second trial was the same as the evidence upon the first trial, and that the jury should have been directed to return a verdict for the defendants in accordance with the views expressed in the former opinion. And, in support of this contention, appellants cite many cases to the effect that the opinion on the first appeal is the law of the case.

The trial court, however, was of the opinion that this new testimony of Miss Lampe was sufficient to authorize the application of the "last clear chance" doctrine to the case; and, that although Miss Benke had been negli-

gent in going in front of the engine, it was, nevertheless, the duty of the defendant companies and their employees to use ordinary care to protect her after they knew she had been struck by the engine, and that if they failed to do so, and her death so resulted, the defendants were liable.

This theory of the case was sustained by the new testimony of Miss Lampe, to the effect that Miss Benke was not killed when she was first struck by the engine at the south line of Eighth street, but that she was killed by being run over by the engine after she fell from the cowcatcher at a point 150 feet north of the place where she was struck.

There can be no reasonable criticism of the rule invoked by the appellants; but the rule has no application where the evidence upon the second trial presented a case materially different from that passed upon by the court in its first opinion. Whenever the case presented by the proof is materially different upon a subsequent trial, the rulings of the trial court should apply the law to the new case thus presented; and, that is the situation we have here.

And, in insisting upon the application of the rule, the appellants point to the fact that the pleadings have not been amended, and that there is no averment in the petition that the engine and train could have been stopped after the engine struck the decedent and before she fell from the footboard to the track. But, since the petition charges negligence against the appellants, in general terms, the plaintiff had the right under the repeated adjudications of this court, to show any negligence upon the part of the defendants. A plaintiff's proof is restricted to specific acts of negligence only when he specifies them in his petition. But, as above stated, under a general charge of negligence, any negligence can be shown. Davis' Admr. v. O. V. B. & T. Co., 127 Ky. 800, 15 L. R. A. (N. S.) 402; Fuller v. I. C. R. R. Co., 138 Ky. 42; Lexington Ry. Co. v. Britton, 130 Ky. 676; Murray v. C. & O. Ry. Co., 139 Ky. 379; P. C. C. & St. L. Ry. Co. v. Schaub, 136 Ky. 652, 136 Am. St. Rep. 273; McQuary v. L. & N. R. R. Co., 128 S. W. 329.

The trial court, therefore, did not err in submitting the case to the jury upon the new theory that Miss Benke's death was caused by the appellants' failure to exercise ordinary care after they knew she had been struck by the

engine   The testimony of Miss Lampe was sufficient to authorize a submission of that question to the jury.

But, in submitting that question, the court gave instruction B, which reads as follows:

"If the jury believe from all the evidence that if while the decedent was caught upon the front part of the engine, the train could have been stopped safely to her and the persons upon said train in time to have prevented her from falling off of said engine and being run over, and that the defendants' agents and servants with all the means at their command, and with safety to the persons on said train, failed to stop said train in time to have prevented decedent from falling from said engine and being run over, they will find for the plaintiff."

Instruction C was the converse of instruction B.

The complaint urged against instruction B is, that it failed to base defendants' liability upon their failure to exercise ordinary care after they had discovered the plaintiff's peril; but that it put upon the defendants the absolute duty to stop the train after they learned that fact.

Stated briefly, the objection to insructions B and C is, that they overlook and fail to embrace the element of ordinary care in prescribing the duty of the defendants.

In this connection the proof upon the second trial contains one very material fact which is not referred to in the former opinion. It is this: Jones, the engineer, was sitting in his usual place in the right or east side of the engine and saw Miss Benke as she came from her home on the east side of Eighth street, and stepped in front of the engine. White, the conductor, was sitting in the left or west side of the engine looking out the front window, and, of course, did not see Miss Benke as she approached the engine from the other side. But, when Miss Benke disappeared in front of the engine, Jones called out to White, "Did that woman get by?" and White answered, "She is under the wheels." And, although it thus appeared that the engineer feared his engine had probably struck Miss Benke, and must have known from White's answer that she had been struck the engine ran 165 feet further before it was stopped.

There was proof by two witnesses, Foy and Baumheckel—both experienced locomotive engineers—that the train in question could have been stopped within ten or fifteen feet; and, although it is argued strenuously by appellants that this testimony is so absurd as not to be cred-

ited, it was for the jury to say whether, under all the proof, the engineer could have stopped his train in time to save Miss Benke's life.

According to Miss Lampe's testimony, which is not contradicted, Miss Benke did not fall from the engine until it had traveled about 150 feet after it struck her.

So, although the jury might have declined to credit the testimony of Foy and Baumheckel that the engine could have been stopped within ten or fifteen feet, there was this admitted fact that the train did not stop until it had gone 165 feet. It is not contended by anyone that the train could not, by the exercise of ordinary care, have been stopped within a much shorter distance.

When carefully read, it will be observed that instruction B did not predicate the defendants' liability upon the failure of its servants to exercise ordinary care to stop the train in time to prevent the decedent from falling therefrom and being run over; on the contrary, it told the jury the defendant was liable if it failed to stop the train in time. A fair interpretation of the instruction as thus drawn placed upon the servants of the company the highest degree of care—extraordinary care; and, although it would seem that in cases of this character this highest degree of care properly should be required, the rule requiring ordinary care in such cases is firmly established.

Appellee suggests that this infirmity in instruction B is cured by the qualifying clause which required the defendants' agents and servants to stop the train "with all the means at their command and with safety to the persons on said train." But, as that qualification should have been added to the instruction requiring ordinary care by the defendants' servants, it is obvious that it did not cure the defect in the instruction requiring a higher degree of care.

For the error indicated in the instruction, the judgment is reversed and the case remanded for a new trial.