## Wallis v. Illinois Cent. R. Co. et al.

May 4, 1943.

Adrian H. Terrell and C. C. Grassham for appellant.

Wheeler and Shelbourne for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

On the first appearance of this case on appeal, we reversed the judgment which gave peremptory instruc-

tion in favor of the railroad company, and Hunt the foreman. Wallis v. Illinois Cent. Railroad Co. et al., 276 Ky. 436, 124 S. W. (2d) 481. On a second trial the jury awarded appellant $4,500 for his injury. We reversed because the court had failed to give an instruction offered by defendants, submitting the question of assumption of risk by Wallis, incident to his employment, including the risk of being burned by sparks from the ordinary use of the acetylene torch. Illinois C. R. Co. v. Wallis, 287 Ky. 88, 152 S. W. (2d) 288.

The facts are stated in the first opinion, and in the second we found them to be substantially the same. We were urged on the second appeal to declare the verdict to have been flagrantly against the evidence, but adhered to the law of the case rule. The third trial resulted in a verdict in favor of defendants. It is urged that the court erred in permitting incompetent, prejudicial evidence to go to the jury; that though it be concluded the evidence was competent, since it had the effect of contradicting a witness, the court should have given appropriate admonition.

Also that the court erred in giving an instruction as to assumed risk of an employee working near an acetylene torch, since on this trial there was no proof of injury from sparks resulting from such use. Lastly, that because the proof that Wallis received his alleged injury by reason alone of molten metal falling from the step, the verdict is contrary to the evidence.

Appellant charged that his injury occurred in January 1936. The last trial was had in January 1942. At a date not shown, but said to have been more than four years after injury, by agreement of parties, the deposition of the chief of the personnel department of T. V. A. was taken on interrogatories, and on trial read to the jury. The officer testified that he received through the mail in June 1941 an application on "Authority's form No. 5," bearing the name "Russell Wallis," for employment. It was not signed but bore at the head the name of appellant. The original was filed with deposition, and introduced as evidence over the objection of plaintiff. What brought the objection was the fact that in answer to the question "What physical defects have you?" appeared the written words, "Not any."

When appellant was on the stand he was asked, on

cross-examination, about this application; admitting that he had made it, he said that he had gone to the county judge seeking employment. The officer told him he would make out an application to the T. V. A., and went over the form, but when they reached the question, supra, he says he told the judge that he could "not stand the examination," and the judge said, "Leave that blank, and I left it blank." Later the daughter testified that she did the writing, her father giving her the "information." She was not asked at the time about the answer "Not any." She was later introduced and was shown the form, and said that when she reached the question she asked her father if he wanted her to answer, and he said, "No," and that it was omitted. She was then asked to write her name, and the words "not any," which she did, and the writing, with the original form, are exhibited. The similarity of the handwriting is striking. Aside from this there was no effort by appellant to show that the words had been written by any one else without his authority; it could hardly be assumed that the officers of the T. V. A. had altered the paper in any way.

The controversy over admission of the document narrows to a question of law relative to admission of evidence. Counsel for appellant assuming for argument's sake that the statement might be considered an admission against interest, argues that there is no proof that appellant made the statement; that it was neither signed nor sworn to by him. It does not appear that either signature or jurat was necessary.

It may be noted from reading appellant's testimony on the subject, that while he said that he told the county judge to pass the question, he does not say that he directed the daughter to leave it blank, and he was sure that only one application was filled out, and only one sent to T. V. A. The contention is made that if the answer constitutes an admission, it was not that of appellant but of the daughter.

It is argued that if the purpose of the answer was to obtain a job with T. V. A. it was false, because the proof shows that appellant, prior to the alleged injury, was blind in the uninjured eye. That being false, it could not be used as evidence, but if so only for the purpose of contradicting the testimony of plaintiff as to the extent of his injury.

Counsel overlooks the fact that the paramount issue here was not the extent of the injury but whether he was injured at the time, place, and in the manner claimed. On this point, if not otherwise objectionable, it was admissible and presented a question, like any other competent evidence, for the jury's consideration, and as to whether the words were written in the application, the jury had the right to consider by comparison the sample of writing tendered. The conflict went more to weight than to competency, and we are of the opinion that it was admissible on the issue of injury or no injury, as well as extent of injury.

The evidence is of that class known as "quasi judicial admissions." It was a voluntary statement amounting to an admission of matter relevant to the issue, as stated, and being so became competent evidence against the party to whom it was attributable, as a fact tending to show the existence of the facts to which it had relation. 22 C. J. p. 297; 31 C. J. S., Evidence, Section 270. Such evidence, where it is not self-serving, and against interest, is substantive evidence. Forestal v. National Surety Co., 168 Ky. 552, 182 S. W. 614; Gess v. Wilder, 237 Ky. 830, 36 S. W. (2d) 617; Honaker v. Crutchfield, 247 Ky. 495, 57 S. W. (2d) 502; Hazelwood v. Woodward, 277 Ky. 447, 126 S. W. (2d) 857. See Sutherland v. Davis, 286 Ky. 743, 151 S. W. (2d) 1021, for distinction and rules relating to the two classes of admissions, judicial and extra-judicial.

The evidence being substantive, there was no necessity for admonition. Lesser v. Jefferson Fire Ins. Co., 141 Ky. 667, 133 S. W. 551; Stegall v. Patton, 231 Ky. 365, 21 S. W. (2d) 488. The statement was relevant to the issue, and though made four years after the accident was not too remote, since the issue at the time of trial was injury or no injury.

In our first opinion we held that appellee assumed the risk of injury from sparks emanating from an acetylene torch used in the ordinary manner, but not from hot metal dropping from the step when appellant undertook to prevent its falling after being severed. On the second trial we held that instruction No. 1 failed to take into account the distinction made in the former opinion as to risks assumed and risks not assumed. We wrote: "Since the evidence for the appellant was to the effect that Mendenez, whom appellant was assisting, did not climb on

top of the load of scrap iron to burn off the step, but stood on the ground to do so, and that appellee was behind him, there was an issue raised as to whether appellee was injured by the use of the acetylene torch in the ordinary manner," or by molten metal falling from the step, and we advised the court, "In the light of these conclusions, the jury should also be instructed that the appellee assumed all the ordinary risks incident to his employment, including the risk" arising from the use of the torch in the ordinary manner.

At the request of plaintiff the court gave instruction No. 1, which was substantially like instruction No. 1 on the second trial. Defendants then offered, and the court (over objection) gave instruction X, which followed the direction of the court in our second opinion. It is insisted that the court erred in giving instruction X, since on the last trial the testimony of Wallis (supported in part by Clark) was entirely different, because he testified that his injury was occasioned by molten metal falling from the step. This was appellee's statement on former trial, corroborated to some extent by Clark.

The argument is based on the theory that this instruction made it possible for the jury to reach the conclusion that a flying spark from the torch caused the eye injury. The argument that the testimony was radically different, is advanced to meet application of the law of the case rule, which in part is relied upon by counsel for appellee. Counsel for appellant cites in support of his position Louisville & N. R. Co. v. Stewart's Adm'x, 163 Ky. 823, 174 S. W. 744; Louisville & N. R. Co. v. Benke's Adm'x, 176 Ky. 259, 195 S. W. 417. Neither of these cases dealt with the giving of an instruction directed on a former trial, but with the question as to the propriety of giving a peremptory, where on appeal we found the testimony on subsequent trials so strengthened by introduction of new witnesses, or by a new state of facts so radically different, as to obviate the rule.

On the second appeal we were urged to hold that the evidence was the same on both trials, and to reverse and direct a peremptory; that the opinion on the first appeal was unsound in conclusions. The law of the case was urged by appellees, but we concluded that we were bound by that opinion, under the law of the case rule, whether

the opinion be right or wrong, sound or unsound. We think that in the instant case we are bound by the same rule.

A careful reading of the proof, and comparison with the testimony on the former trials, shows the proof to be the same in the instant case. Therefore we are again bound by the rule, whether our conclusion in the former opinion be right or wrong. Aside from this, while appellant did lay the injury to his eye to the dropping of metal, we note that he at one time refused to sign a statement made out by Dr. Powell to the effect that his injury was caused by hot metal dropped. into his eye. Further, some expert medical testimony, by several doctors, as to a superficial burning of the eyelid, might have justified the conclusion that the injury was caused by sparks.

Again when we look to the proof in the former cases, we find that the testimony as to the cause of the injury was substantially the same as here, though there was proof that the use of an acetylene torch on metal would cause sparks to fly. So, since the evidence. appears to us to have been substantially the same in all the cases, and conforms to the pleading, the law of the case rule, as applied in Cincinnati & O. R. Co. v. Childers, 219 Ky. 768, 294 S. W. 481; Cincinnati N. O. & T. P. R. Co. v. Alexander, 209 Ky. 338, 278 S. W. 886; Chesapeake & O. R. Co. v. Lang's Adm'x, 141 Ky. 592, 133 S. W. 570; City of Louisville v. Redmon, 282 Ky. 1, 137 S. W. (2d) 350; Ball v. Middlesboro Coca Cola Works, 266 Ky. 364, 99 S. W. (2d) 205, applies here.

The contention that since the proof shows that plaintiff received his injury by molten metal falling from the steps into his eye is uncontradicted, the verdict of the jury is against the weight of the evidence, calls for little comment. Counsel relies solely upon Fordson Coal Co. v. Bledsoe, 236 Ky. 409, 33 S. W. (2d) 302, a workman's compensation case. A casual reading will manifest that it is inapplicable. We repeat what we said above, that the issue all through this case, beginning with the pleadings, was whether or not appellant received any injury at the time and place shown by his proof. In the last opinion we expressed a willingness to venture the assertion that the verdict seemed to be against the weight of the evidence. We can express here the same in a different way; that since the jury found for the defendant its

verdict is amply supported by the evidence on the issue upon which the case was tried throughout.

Finding no error justifying reversal, the judgment must be and is affirmed.