## The Lax-Fos Company v. Rowlett.

(Decided October 5, 1911.)

### Appeal from McCracken Circuit Court.

Falling Elevator—Injury to Colored Servant—Negligence of Owner.— This action is by an ignorant colored man against a Proprietary Medicine Co., for damages by the falling of an elevator of the company which he was using. Held, that in determining the right in this case the jury was warranted in considering the fact that appellee was an ignorant negro with very limited knowledge of the meaning of the words and terms employed in the release, by which the case was compromised. If he did not understand it, he should not be bound by its terms which under the evidence would certainly be most inequitable and unjust to him.

WHEELER & HUGHES for appellant.

THOMAS N. HAZELIP, HENDRICK & CRICE for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

The Lax-Fos Company is engaged in the manufacture and sale of proprietary medicines at Paducah, Kentucky. Its business is conducted in a three-story building. A freight elevator is used in this building for carrying merchandise from one floor to another. Tillman Rowlett, a colored man, who had been in the employ of said company for some eight months, was injured on December 11, 1909, while engaged in carrying some boxes of medicine on the elevator from the third to the first floor. His injury was caused by the elevator becoming unmanageable and falling.

In August, 1910, he instituted a suit, wherein he sought to recover damages for his injury. The company denied liability, pleaded contributory negligence, and, in addition, pleaded a settlement with the plaintiff, and filed with its pleading a paper purporting to be a receipt in full, releasing the company from any

further liability. The plaintiff denied that the paper filed with the pleading was the paper executed by him, and pleaded that the paper which he did execute was signed by him under the mistaken belief that it was simply for the purpose of enabling his employer to receive certain insurance money on account of his injury. Upon a trial before a jury plaintiff recovered a verdict for $500. He was terribly injured in the fall, and the amount awarded him is scant compensation if he is entitled to recover anything at all.

The paper evidencing settlement or release relied upon by appellant recites that it is executed in consideration of $107. Appellee testifies that he was paid nothing whatever at the time of the execution of this paper; and appellant admits the correctness of this statement, but says that the amount called for in the receipt was the amount of wages which it had paid appellee after his injury, together with the bills for medical attention which it had paid for him. There is no conflict in the evidence as to the nature and extent of appellee's injury, and there is but little contrariety in the evidence as to how it was brought about. Appellee testifies that Mr. Martin, the foreman, told him to get on the elevator, and stated that when he did so he would let him down safely; that after he received this assurance he went on, and immediately that Mr. Martin attempted to lower the elevator, it fell. He states further that the employees were not allowed to use the elevator because it was unsafe. Mr. Martin, upon this point, testifies that, after the appellee was on the elevator, he told him he would let him down safely. He further testified that every employe in the building had been instructed not to use the elevator. On this testimony the Court said to the jury in instruction No. 1, "It is the undisputed evidence in this case that the elevator of defendant which injured plaintiff was in a defective and dangerous condition at the time complained of by the plaintiff, and plaintiff was injured on account of said dangerous and defective condition, and the court instructs you that if you should believe from the evidence in this case that defendant's foreman ordered, directed or instructed plaintiff to descend on said elevator at the time complained of by him, then the law of this case is for plaintiff, and you shall so find." Appellant objects to so much of this in-

struction as tells the jury that the elevator was in a defective and dangerous condition and that the evidence showed this fact. After a careful examination of the record we are constrained to hold that this objection is not well taken, for the evidence does show that the elevator was in a dangerous and unsafe condition, and there is no evidence to the contrary. The only issue of fact raised by the evidence at all as to how the injury occurred is whether or not the foreman told the appellee to get on the elevator. He says that he did not; appellee says that he did. This was a question which the court properly, in instruction No. 1, submitted to the jury. The foreman testifies that he told appellee that he would let him down safely. He further testifies that appellee had no right to use the elevator, and the jury was warranted, under this evidence, in accepting the statement of appellee that the foreman told him to get on the elevator.

The only other controverted question was the execution of the release. On this point the court told the jury in instruction No. 2, that:

"If you shall believe from the evidence in this case that the plaintiff signed and acknowledged, or authorized his name to be signed to, or acknowledged the compromise agreement, read to you in evidence, then the court instructs you that he is bound by said agreement, and you cannot find for him on account of the negligence of the defendant complained of and as defined to you in instruction No. 1 herein, unless you shall further believe from the evidence that plaintiff was induced to sign and acknowledge said written agreement or compromise through fraud or misrepresentations of the defendant or its agents in securing same, in which event and if you shall so believe from the evidence, then plaintiff is not bound by said agreement or compromise."

In addition to the instruction on the measure of damages, which is unobjectionable, the court gave instructions Nos. 6 and 7, as follows:

"The court instructs you that if you shall believe from the evidence in this case that at the time plaintiff signed and acknowledged the written agreement or compromise, if he did sign and acknowledge the same, that defendant's agents represented to him that they only wanted the paper to enable the defendant to settle with

the insurance company, and shall further believe that plaintiff did not know or understand that by said paper he was settling his claims, now sued for in this action, then, plaintiff is not bound by said agreement of compromise."

"If you believe from the evidence that the plaintiff knew the defective and dangerous condition of said elevator and voluntarily took passage thereon, and for his own purposes and not in obedience to any command or directions from those superior to him in the employ of said Lax-Fos Co., and that the injuries received by plaintiff, if any, resulted from plaintiff going voluntarily upon said elevator, then the law is for the defendant, and you will so find."

These instructions admirably presented the law of the case and the jury could not by any possibility have misunderstood or misconstrued them. It is not pretended that, at the time of the execution of the release, any money was paid to appellee, and the jury did not believe that when he executed the writing, whether the one in suit or not, that he understood it to be a release of the company from any liability because of the negligence resulting in his injury. The fact that the paper was executed with all the formality of a deed adds nothing to its validity, and sheds no light upon the mooted question as to whether or not appellee, in executing it, understood it. He testifies emphatically that he did not, while four witnesses for appellant testify that it was read over to him and explained to him and that he must have understood it. Whether or not he did, he alone can know. At most the evidence of the witnesses for appellant amounts to but a statement that he was given an opportunity to understand it and they thought he did. For a time while he was confined in his house because of his injury the company had regularly sent to him his weekly wages by another employee; and the company had paid for him certain doctor's bills incurred during this time. He testifies that he understood that the paper which he was signing was one to enable his employer to recover from an insurance company this money so paid out to and for him. His statement is altogether reasonable, and it is improbable that he understood, in executing this paper for which he was paid nothing, that he was releasing or attempting to relieve his employer from liability on account of his injuries resulting from

its negligence. In determining the right in this case the jury was warranted in taking into consideration the fact that appellee was an ignorant, uneducated negro, unable to either read or write, and possessing, necessarily, a very limited knowledge of the meaning of words and terms such as were employed in this release. When so considered it is not difficult to understand how he might have totally misconceived the purpose for which the paper was being executed, although the witness for appellant attempted to explain it to him in perfect good faith and sought to take no advantage of him. If he did not understand it he should not be bound by its terms and provisions, which, under the evidence in the case, would certainly be most inequitable and unjust to him.

We have carefully considered the record and fail to find any meritorious ground upon which a reversal could be justified.

Judgment affirmed.