## Hazelwood v. Woodward.

Feb. 3, 1939.

Eugene Hubbard, Judge.

TRABUE, DOOLAN, HELM & HELM and J. D. INMAN for appellant.

ROBERT HUBBARD and LUKINS & JONES for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

A motion was made to strike the bill of exceptions in this case on the ground that it was not filed within the time required by law. This motion is overruled and we are considering the case on its merits. In view of the conclusion reached, it is unnecessary to give our reasons for overruling the motion.

Dr. John Hazelwood was an ear, eye, nose and throat specialist who had practiced in New Albany, Indiana, for many years and by the year 1927 he had accumulated a large estate, variously estimated in the evidence at from $125,000 to $400,000. He had one child, who had died, and therefore his only heirs at law were his sisters and brothers, the appellant, Varney Hazelwood, the appellee, Blanche Woodward, Dr. Fred Hazelwood and Mrs. Minnie Rader. Appellant in the year 1927 was living in Joplin, Missouri, and it appears that Dr. John Hazelwood desired that appellant should come to see him and should then go to New York to take a special course in medicine. Dr. John forwarded to appellant in Missouri approximately $25,000 or $30,000 in money and securities. Appellant came to live with Dr. John in February, 1927, and remained with him until some time in December of that year. Including the money and securities forwarded to appellant in Missouri, the appellant obtained a large amount of property from Dr. John in the way of money, securities and real estate. There is no way of knowing the exact amount of money and property so obtained by him but, from a re-

port of revenue agents who made an examination to ascertain the amount of Dr. John's income tax, it appears certain that appellant obtained as much as $89,000 besides securing a deed to certain real estate in New Albany valued at approximately $12,000. He later conveyed this real estate to Mrs. Rader. It also appears that Dr. Fred Hazelwood obtained at least $90,000 from Dr. John. After large amounts had been obtained by these two, a guardian or committee was appointed for Dr. John and suit was instituted by this guardian or committee against appellant and Dr. Fred. This suit was settled by these two turning over to the guardian sufficient property for the support and maintenance of Dr. John. On August 27, 1930, Dr. John died and assets amounting to about $50,000 came into the hands of his personal representative, of which sum approximately $37,000 was consumed in payment of a claim of one Catherine Snell against the estate. Dr. John left a will bequeathing and devising large amounts of property. Apellee filed a contest of this will in the Floyd (Indiana) Circuit Court, which was later dropped.

Appellee claimed and testified in this action that appellant told her that Dr. John had turned over to him a large amount of money and securities to hold in trust for himself and brothers and sisters; that the estate of Dr. John amounted to somewhere between $300,000 and $400,000 and that he was going to get the entire estate in order to save it for the family. It appears that appellant had fears that some person or persons other than members of the family might get into possession of Dr. John's money and securities. Appellee says that appellant on numerous occasions told her that everything would be alright and that such property as he got from Dr. John would be held in trust for the brothers and sisters by him and insisted that she trust him and that everything would come out alright.

Shortly after Dr. John's death, appellee met with appellant and Dr. Fred and she was paid $5,000 by Dr. Fred. She says that after she was unable to get the brothers to make any further settlement with her she determined to file suit for a settlement. She did file suit in March, 1931, against appellant and Dr. Fred in the Floyd (Indiana) Circuit Court, alleging that appellant had received in trust from Dr. John something like $400,000 for the benefit of herself and her other brother and sister, and asked for an accounting.

On April 13, 1932, appellant and appellee, accompanied by her husband, met in Louisville and apparently agreed on a settlement of the last mentioned suit and immediately started for St. Louis in order to complete the settlement and prepare the necessary papers. On the way to St. Louis appellant called Roy Coyne, a lawyer of Joplin, Missouri, with whom appellant was acquainted when he lived in Joplin, to meet them in St. Louis the next day, which he did. On the 14th of April, appellant together with appellee and her husband went to the room of Mr. Coyne at a hotel and there a formal release and settlement was drawn up by Mr. Coyne, which recited that:

> "In consideration of the sum of One Dollar ($1.00) and other good and valuable considerations, the receipt of which is hereby acknowledged, I, Blanche Woodward, of Lawrence, Indiana, do hereby release and forever discharge Varney Hazelwood and Ruth D. Hazelwood from any damages, claims or rights in action which I may have had or have against either or both for any property or monies accruing out of any transactions or dealings in the estate of John Hazelwood of New Albany, Indiana."

The quoted provision was only a small portion of the release, as it went on to recite in detail the controversy between the parties and to provide fully and formally that it was a release of all rights of action and a settlement of the lawsuit which had been filed by appellee against appellant in Floyd County, Indiana. This paper was typewritten by the hotel stenographer, who was called to the room for that purpose. Appellee claims that appellant agreed and promised to pay her $63,000 in settlement of the Floyd County, Indiana, lawsuit and in settlement of all claims against him on account of the alleged trust. Appellant says that the agreement of settlement was that he was to pay appellee $10,000. Whatever it was, the agreement was made at the meeting in Louisville. After the completion of the typewritten release above mentioned, appellant made a payment to appellee, which she says was a $5,000 treasury certificate, and she testifies that appellant asked her to trust him to pay her $5,000 more when they got back to Louisville, which she agreed to do. She says he paid her the second $5,000 on their return to Louisville. Appellant says that at the time of the signing of this release he paid to her $10,000, which was the amount he says she agreed

452

to settle for, by delivering to her two treasury certificates of $5,000 each. While it is not essential to a decision of the case to determine the correctness of these opposing claims, we are inclined to the view that appellant's theory is correct and that he delivered to her at that time the two treasury certificates for $10,000. When appellant made the payment to appellee in the hotel room in St. Louis, whether it was $5,000 or $10,000, another paper was prepared by Mr. Coyne and written in longhand by him as follows:

"St. Louis, Missouri,
"April 14, 1932.

"Received of Varney Hazelwood the sum of Ten Thousand Dollars ($10,000.00) being in full payment for all claims, bonds, stocks, property, damages or monies which I claim as owing to me which was either turned over to Varney or acquired by him from my brother, John Hazelwood. This sum of money settling and compromising all claims of whatsoever kind or description.

"(Signed)          Blanche Woodward."

Appellee claims that the last mentioned paper, sometimes referred to in the evidence as a receipt and sometimes as a receipt and release, was not read to her and was not read by her; that appellant stated and represented to her that it was merely a receipt for $10,000; that appellant had agreed to pay her $63,000 in settlement of the lawsuit and that by reason of appellant's statements and representations to her she did not know or realize that she was signing a release of her claims for the $10,000.

The parties returned to Louisville the next day. Appellee says that on numerous occasions she spoke to appellant about paying her the balance of $53,000 which he had agreed to pay, but that he always put her off. Apparently no written demand was ever made for the balance she claims to have been due and she does not claim to have written any letters to appellant about it.

On May 25, 1935, appellee filed the present action against appellant, alleging that on or about the 14th of April, 1932, she entered into an agreement with appellant in settlement of the Floyd County, Indiana, lawsuit, and to release and discharge him from all claims and demands against him on account of her rights in the

Dr. John Hazelwood estate, in consideration that he would pay her the sum of $63,000, and that he had paid her only $10,000, praying judgment for the balance of $53,000. The typewritten release above referred to is set out in the petition and is referred to as being the agreement. The appellant filed answer and moved to transfer to equity and this motion was sustained, but later, on motion of appellee, the case was transferred to common law over appellant's objection. Appellant, in his answer, pleaded that the controversy had been settled in full and set up as a defense the typewritten release above referred to and also the receipt and release above quoted in bar of appellee's claim against him and as a full settlement of the controversy. Appellee by reply alleged that the receipt and release drawn in longhand was obtained from her by fraud on the part of the appellant, in that it was not read to her or by her and that appellant represented to her at the time of signing that it was only a receipt for $10,000. The case was tried before a jury and verdict returned in appellee's favor for the $53,000 balance claimed by her, and from judgment entered on that verdict appellant prosecutes this appeal.

Appellant insists that the judgment should be reversed, assigning the following errors: (1) That no cause of action was stated because appellee based her action on a written contract but claims additional consideration in conflict with the writing without seeking a reformation thereof; (2) that the issues were equitable and the case should not have been transferred to the common law docket; (3) that the verdict is flagrantly against the evidence; (4) that incompetent evidence was admitted; (5) that competent evidence offered by appellant was excluded; and (6) that the court erred in refusing to grant a continuance on account of the absence of a witness, Agnes W. Guerin.

(1) There is no question as to the correctness of the general rule relied on by appellant that it is necessary to seek a reformation of a written instrument either on the ground of fraud or mistake if there is an attempt to add to the terms of the instrument or to import therein an additional executory and contractual consideration. However, section 472 of the Kentucky Statutes provides that the consideration of any writing may be impeached or denied by a pleading verified by oath and this court, in construing that statute, has con-

sistently held that the true consideration in a deed or other writing may be shown by parol and without seeking a reformation thereof, although the result of this is a contradiction of the written instrument, and that, as to all instruments acknowledging the receipt of a consideration, it is competent to show by parol that no consideration was in fact paid or received, and that the consideration was greater or less than the one expressed in the instrument. Apple v. McCullough, 239 Ky. 74, 38 S. W. (2d) 955; Holbrook v. Letcher County, 223 Ky. 597, 4 S. W. (2d) 382; Newton v. Newton's Adm'r et al., 214 Ky. 278, 283 S. W. 83; Beaver Dam Coal Company v. Brashear, 246 Ky. 69, 54 S. W. (2d) 609; Continental Casualty Company v. Jasper, 121 Ky. 77, 88 S. W. 1078, 28 Ky. Law Rep. 53.

In the case at bar the typewritten release set out in the petition does not even profess to state the true consideration and we are of the opinion that it was not incumbent on appellee, suing in this action for the true consideration, to seek a reformation of the instrument or attack it on the ground of fraud. As a matter of fact, the real cause of action, though inaptly stated in the petition, was on the oral promise made at the time of the execution of the typewritten release. The "other good and valuable considerations" mentioned in the release might well have been the $10,000 paid and appellant's promise to pay an additional $53,000.

Appellant cites in support of his contention the text of 22 C. J. 1171, as follows:

"Where Consideration Executory or Contractual.— Where the statement in a written instrument as to the consideration is more than a mere statement of fact or acknowledgment of payment of a money consideration, and is of a contractual nature, *as where the consideration consists of a specific and direct promise by one of the parties to do certain things,* this part of the contract can no more be changed or modified by parol or extrinsic evidence than any other part. * * *"

It seems to us, however, that this authority does not strengthen appellant's contention, but, on the contrary, is rather against it, because in the case at bar the statement in the written instrument sued on is a mere statement of fact and acknowledgment of payment of a money consideration and is not of a contractual nature.

We do not regard this as different from an action for the true consideration due under a deed which recites acknowledgment of the receipt of a consideration, and are of the opinion that appellee stated a good cause of action without seeking a reformation or attacking the typewritten release on the ground cf fraud.

(2) Appellant's contention that the issues raised in the case were equitable and should not have been transferred to the common law docket presents a question on which the authorities are somewhat in confusion. Appellant plead in bar of appellee's right of recovery the receipt and release in longhand above quoted. This instrument was complete on its face and apparently showed the true consideration for the release, namely, $10,000. Appellee replied by attacking the release on the ground that she did not read it and that it was not read to her and that it was obtained by appellant fraudulently representing to her that it was a mere receipt for $10,000.

Many authorities hold that where a release is attacked on the ground of fraud, the issue is equitable if the fraud relied on is fraud in the consideration or in the inducement, but that where the fraud relied on relates to the execution of the instrument itself, the issue may be tried at common law. 23 R. C. L. 410; Olston, Adm'r, v. Oregon Water Power & R. Company, 52 Or. 343, 96 P. 1095, 97 P. 538, 20 L. R. A., N. S., 915. However, as pointed out in the notes to 20 L. R. A., N. S., 915, all authorities seem to agree that where the fraud is in the execution, the issue is triable at common law. In the case of Lanham v. Louisville & N. Railroad Company, 120 Ky. 351, 86 S. W. 680, 27 Ky. Law Rep. 772, Lanham signed a release compromising all claims against the railroad company for personal injuries received by falling off a handcar for $100. He filed suit claiming that, in addition, the company promised to furnish medical and surgical treatment and sought to recover damages for failure to furnish this treatment. The court denied a recovery, but the basis of that decision was that the plaintiff sought to impose upon the Railroad Company an additional contractual liability without seeking a reformation and without making any attack upon the release on the ground of fraud. In Life & Casualty Insurance Company of Tennessee v. Deaton, 264 Ky. 507, 95 S. W. (2d) 10, relied on by appellant, this court held that it was necessary to seek a reforma-

tion where an attempt was made to import an additional contractual agreement into an insurance policy; and in Castleman-Blakemore Company v. Pickrell & Craig Company, 163 Ky. 750, 174 S. W. 749, the substance of the decision was that where a contract is valid and complete in itself, parol evidence of other terms is not admissible under the guise of showing consideration.

In this State there seems to have been little discussion of the question as to whether or not the issue is triable in law or equity when a release is plead in bar and an attack made thereon on the ground of fraud. It seems that the practice of attacking releases on the ground of fraud and trying the issue of fact before a jury has been accepted without question, as illustrated by the following cases: Louisville & N. R. Co. v. Cox, 145 Ky. 667, 141 S. W. 389; McGill v. Louisville & N. Railroad Company, 114 Ky. 358, 70 S. W. 1048, 24 Ky. Law Rep. 1244, and cases therein cited; Hooks v. Cornett Lewis Coal Company, 260 Ky. 778, 86 S. W. (2d) 697; Howell v. Louisville & N. R. Company, 251 Ky. 662, 65 S. W. (2d) 748; Houston, Stanwood & Gamble Company v. Bain, 157 Ky. 623, 163 S. W. 765; Glisson v. Paducah Railway & Light Company, 87 S. W. 305, 27 Ky. Law Rep. 965.

In Wagner v. National L. Insurance Company, 6 Cir., 90 F. 395, 33 C. C. A. 121, 61 U. S. App. 691, Judge Taft said [page 404], "It is difficult to see how there could be any doubt about the right in an action at law to void a release by a reply of fraud;" and in George v. Tate, 102 U. S. 564, 26 L. Ed. 232, the Supreme Court said [page 570]:

"It is well settled that the only fraud permissible to be proved at law in these cases is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device an instrument which the party did not intend to give."

We are of the opinion that where a release is plead and an attack made thereon on the ground of fraud in the execution, such an issue is properly triable at common law.

(3) We are of the opinion that appellant's contention that the verdict is flagrantly against the evidence cannot be sustained. While in our judgment the verdict is probably against the weight of the evidence, we cannot substitute our opinion for the verdict of the jury.

It is true that appellant and Mr. Coyne both testified that appellee understood that she was settling the lawsuit for $10,000 and that both the typewritten release and the receipt and release in longhand were read to her and understood by her before she signed them. However, appellee flatly denies this testimony and says that appellant agreed to pay her $63,000 and that she did not know the contents of the longhand release and only signed it because appellant represented to her that it was a receipt. It is somewhat significant that both appellant and Mr. Coyne refer to this paper on the trial as a receipt.

It is also true that appellee, who had a contract with her attorneys in the Indiana lawsuit for a 40 per cent contingent fee, settled with them on the basis of the $10,000 settlement, paying to them $4,000. She says, however, that appellant told her to do this. She also stated to relatives that she had made a settlement of the lawsuit and that appellant had settled with her for $10,000. She also waited three years after signing these papers in St. Louis before bringing the present action, and in the meantime filed suit in the State of Michigan against her brother, Dr. Fred Hazelwood, very much on the order of the Floyd County, Indiana, lawsuit, in which she alleged that Dr. Fred had received a large amount of money from Dr. John Hazelwood in trust for her and seeking an accounting from him. In this suit, she alleged that appellant had settled the suit filed by her against him in Floyd County, Indiana, to her satisfaction, turning over to her an amount of real estate and personal property received from John Hazelwood which amounted to an equitable division for her share of said property. These facts, along with others of less importance appearing in the record, bring us to the conclusion we have above indicated that in our judgment the verdict might be said to be against the weight of the evidence, but we do not feel that they are sufficiently conclusive to justify us in saying that the verdict should be set aside on the ground that it is flagrantly against the evidence. This is peculiarly a matter for the jury and two juries in this case have returned verdicts in favor of appellee, the first verdict being set aside on motion for a new trial.

(4) Appellant contends that the trial court erred in admitting evidence as to the size of Dr. John Hazelwood's estate and in admitting evidence that appellant

had agreed with appellee to hold in trust for her and other members of the family such property as he received from Dr. John. However, it appears that no objection was made to the introduction of this testimony on the trial. In any event, we are of the opinion that testimony as to the size and value of the estate and testimony introduced to the effect that appellant agreed to hold the estate in trust for his family was relevant and competent as indicating a probability of the truth of appellee's testimony that appellant agreed to settle the Indiana lawsuit for $63,000.

Appellant complains especially that Frank E. Lorch, a witness for appellee, was permitted to estimate the value of Dr. John's estate at approximately $350,000. We think there is some justice in this contention, as this witness does not appear to have qualified himself to speak on this matter. He merely stated that he had made an investigation. However, we do not think the error in admitting this evidence is sufficiently prejudicial to warrant a reversal. It was definitely established that the estate amounted to over $270,000, and there was other competent evidence, including statements testified to have been made by appellant, that it amounted to $300,000 or $400,000.

Appellant also complains because Samuel E. Simonson, a witness for appellee, was permitted to testify as to the size and value of the estate. We do not think there is much merit in this contention, as this witness states that he made an examination of the securities owned by Dr. John and made a list of them and formed his judgment as to the value of the estate at the time of making this list, although at the time of the trial he did not remember the particular items of the estate.

Appellant also claims that the court committed error in permitting evidence as to a suit brought against him, mentioned above, by the guardian who had been appointed for Dr. John, but in our opinion, this evidence was competent as showing the relationship and dealings between appellant and Dr. John and as bearing on the question of the amount and extent and circumstances under which appellant had received property from him.

Appellant further claims that the court erred in admitting in evidence a number of telegrams sent by appellant to appellee in order to fix certain dates, his

theory being that such telegrams contain no reference to a trust and were therefore irrelevant. We think, however, that these telegrams were competent as indicating the activity of appellant and his constant communication with appellee as bearing on the question of whether or not he was recognizing a trust in himself in her behalf. In any event, we can see no harmful error in the admission of these telegrams in evidence.

(5) Appellant claims that the trial court committed error in refusing to permit him to ask appellee certain questions with reference to admissions made by her in the suit filed by her in the state of Michigan against Dr. Fred Hazelwood, the particular admission about which she was questioned being that one in the suit stating that appellant had settled and compromised the suit against him to her satisfaction and turned over to her real estate and personal property which amounted to an equitable division for her share in Dr. John's estate. We find that the trial court, when this testimony was first offered, refused to admit it and this, of course, was erroneous, but this error was cured by later action on the part of the court when it permitted appellant to introduce in evidence a copy of the petition in that lawsuit. This petition contained the admission about which she was questioned and which the trial court excluded, and the petition being in evidence, the appellant was in a position to draw any inferences therefrom in argument or otherwise more advantageously than he could have done had the trial court required the appellee to answer the question asked her. The petition, itself, being in evidence was the best evidence of any admissions made by her therein.

Appellant's contention that the trial court erred in rejecting the will of Dr. John Hazelwood, in which he disposed of all of his property and bequeathed to appellee only $50, is without merit as it was a will of a foreign state and was only certified as a correct copy by the Floyd County, Indiana, Circuit Clerk. The will did not bear the seal of the court and was not certified by the judge of the court as required by section 1635, Kentucky Statutes, nor was it properly authenticated according to the Act of Congress. The trial court therefore properly sustained the objections to its introduction in evidence. Brown v. Brown, 207 Ky. 133, 268 S. W. 801; Williams v. Duncan, 92 Ky. 125, 17 S. W. 330, 13 Ky. Law Rep. 389.

(6) Appellant's final contention is that the court erred in refusing to grant a continuance on account of the absence of the witness, Agnes W. Guerin. We are of the opinion that the trial court committed no error in overruling the motion for a continuance under circumstances shown in the affidavit, as the affidavit as to her testimony was read to the jury as her deposition. There is little controversy in the evidence as to the truth of the matters about which she would have testified.

We have considered all the contentions made by appellant and find that no error was committed by the trial court except the minor error we have pointed out in permitting an unqualified witness to estimate the value of Dr. Hazelwood's estate. As we do not consider this error of any great importance or as prejudicial to appellant's substantial rights, it follows that the judgment must be and is hereby affirmed.

The Whole Court sitting.