## High Splint Coal Co. v. Cox.

March 2, 1945.

H. C. Gillis, Robert L. Smith and James Sampson for appellant. Baker & Reams for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

Walter Cox was an employee of the High Splint Coal Company (hereinafter referred to as the Company) which was not operating under the Workmen's Compensation Act. He recovered a judgment of $4500 against the Company for personal injuries received in a mining accident. It is asking a reversal of the judgment because: 1. Plaintiff's injuries resulted solely from his own negligence; 2. a compromise settlement was entered into between the parties which released the Company from all liability; 3. the court erred in not transferring the cause to equity for trial of the issue of reformation or cancellation of the compromise agreement for alleged misrepresentation and fraud; 4. plaintiff is required to return the sum received in settlement in order to maintain his action; 5. the instructions were erroneous.

The fraud relied upon here was in the execution of the release—that it was not read to plaintiff—therefore on the authority of Hazelwood v. Woodward, 277 Ky. 447, 126 S. W. 2d 857, 862, we hold that this issue was properly triable at law, and that the court did not err in overruling the Company's motion to transfer to equity for a trial thereof. As we have reached the conclusion that the parties entered into a binding compromise settlement it will be unnecessary to consider the other grounds relied upon for reversal.

Cox was a coupler on a mine train and suffered an accident on March 2, 1943, while switching empty cars when they were struck by another mine train. His left leg was broken, a muscle in his right thigh was ruptured and there is evidence that the neck of the femur was fractured. He was immediately taken to a hospital where he received the customary treatment for such injuries, but the bones in his leg did not form a union and it was necessary to hold them together with a plate.

After leaving the hospital and while still wearing a cast, Cox went to the office of J. E. Taylor, manager of the Company, and requested financial assistance. Cox testified that Taylor replied he could do nothing for him, while Taylor's testimony was to the effect that he told Cox he would have to take the matter up with the Company's officials. After obtaining authority to make a settlement, Taylor directed Andy Hagey, a deputy sheriff employed by the Company, to go in an automobile for Cox and bring him to Taylor's office. Cox cannot read or write but can sign his name. Mrs. Cox was educated, therefore her husband took her along to the Company's office for the reason, as he expressed it, "There might be something up Jack's (Taylor') sleeve".

Taylor testified that when Cox and his wife arrived at his office he informed Cox there was no liability on the Company but that it would pay $500 to settle his claim; that Cox conferred with his wife and then countered with $600. A full settlement of Cox's claim for injuries was finally reached by the Company paying $500 in cash and canceling a debt of $82.32 Cox owed it for rent, light and fuel. Thereupon, Taylor directed E. H. Smith, an office man, to make up a release for Cox to sign and to give Cox a check for $500. The evidence for the Company is that this was done and that

Smith read the release to Cox who signed same in the presence of Smith and Mrs. Hazel R. Atchison, a secretary in Smith's office, who then and there affixed their signatures on the instrument as witnesses. Mrs. Cox was then handed a check for $500 in her husband's presence.

The release is a printed form with blanks filled in on a typewriter, which typewritten parts we show in italics to distinguish them from the printed matter. The release and check read:

"Whereas, I, *Walter Cox,* of the County of *Harlan* and State of *Kentucky,* was injured and damaged on or about the *2nd* day of *March 1943* while employed at a coal mine owned and operated by the *High Splint Coal Co.* under circumstances which, I claim, render said Company liable for damages; and

"Whereas, such liability is denied by said Company, and

"Whereas, both parties desire to compromise, adjust and settle the entire matter:

"Now, therefore, in consideration of the sum of *Five Hundred Eighty Three* dollars & *32/100* ($583.32) to me this day paid by the *High Splint Coal Company* the receipt of which is hereby acknowledged, I do hereby compromise said claim, and do hereby release and forever discharge the said *High Splint Coal Company,* its successors or assigns, and all companies, whose mines are leased to and operated by it, their agents and employees from any and all liability for all claims, for all injuries and damages to me and my person, now or heretofore existing, and including any that may hereafter develop, as well as those now apparent; and also do hereby release and discharge them from all suits, actions, causes of action and claims for injuries and damages which I have, arising out of the injury and damages above referred to and any and all claims and liabilities for any and all injuries and damages now existing or may hereafter develop on account of any injury or damages heretofore sustained by me, and I do hereby acknowledge full satisfaction of all such liability and causes of action.

"It is distinctly understood and agreed by me that the sole and only consideration inducing me to the execution of this release is the payment to me of the sum

of money mentioned above, and the compromise and settlement of all said matters.

"I further represent and covenant that, at the time of receiving said payment and signing this release, I am of lawful age, (over 21) and legally competent to execute it, and that before signing and delivering it I have fully informed myself of its contents and execute it with full knowledge thereof and of my own free will and accord.

"Given under my hand at *High Splint, Kentucky* this the *28th,* day of *May, 1943, 19—*

"(Signed) *Walter Cox.*

"Witnesses if signature
by mark:

"*$500.00 Cash*

"*$ 83.32 Overdraft also June, July, August and Sept. Cuts which are included in the $ 83.32 overdraft.*

"583.32 Total.

"We, the undersigned, do hereby certify that we are personally acquainted with the above named *Walter Cox,* who acknowledged, executed and delivered said instrument in our presence, and know him to be of lawful age, (over 21) and legally competent to execute it; that before signing it, he had fully informed himself of its contents by reading it, or having it read to him; and that he executed it with full knowledge thereof and of his own free will and accord.

"Given under our hands this *28th* day of *May 1943.*

"(Signed) *E. H. Smith*

"(Signed) *Hazel R. Atchison.*"

"High Splint Coal Company,
Incorporated.                                          No. 7763

"Miners of Hi-Lo Coal

"High Splint, Ky. *May 28, 1943*

"Pay to the order of          *Walter Cox*          $500.00
"*Five Hundred Dollars.*
"For *injury March 2nd, 1943 in full*

High Splint Coal Co., Inc.
"By *E. H. Smith.*"

"To Harlan National Bank
   Harlan, Ky.

Cox testified he could not read and thought the release was a settlement only for the time he had lost and would lose until he returned to work in a month or two; that when the settlement was filled out and handed to him by Smith he informed the latter he could not read and that his wife would sign it and Smith "drug it back and said, 'Put your name here' "; and that Smith never read the release to him.

Mrs. Cox corroborated her husband and testified she did not read the release because when her husband requested Smith to permit her to read and sign it, the latter pulled it back and said, "No"; that neither she nor her husband asked Smith to read the release and it was not read to them; that a settlement was never mentioned and the payment was for loss of time. She admits that the check was given her and she went with her husband to the bank that day where he cashed it (although he testified that she cashed the check), but she never read the check. She does not attempt to explain why she did not read the check other than "I knowed what it was, but didn't take the first hint."

Mrs. Atchison and Hagey testified that they were in the room when Smith read the release aloud to Cox. Taylor and Karl Spillman, the Company's payroll clerk, were both in the latter's office (which is next to Smith's office with an open doorway between) and as they were within 10 feet of Smith they heard him reading the release. Hagey testified that when he drove the Coxes home after the release was executed, Cox said it was better to make a settlement as he could get a job picking slate, and nothing was said about lost time.

The Company proved by Taylor that the time Cox lost between the date of the accident and the date of the settlement amounted to only $388 (the miners were on strike part of that time), which was $195.32 less than the sum Cox received in the settlement. He further testified that in addition to the $583.32, the Company paid Cox's hospital bill in the amount of $515, as the "cut" of $2 per month from the miners' pay for medical protection covered only ordinary sickness of miners and their families and not accidents.

In his pleading plaintiff attacked the settlement on the ground of misrepresentation and fraud. We

have written that where one seeks to avoid such a settlement on this ground he has the burden of producing clear, unequivocal and convincing evidence; that a mere preponderance of the evidence is not sufficient. Saylor v. Clover Splint Coal Co., 297 Ky. 604, 180 S. W. 2d 563.

From the resume of the evidence given above it is seen that it does not even preponderate in behalf of plaintiff but is overwhelmingly against him. When the testimony of all the witnesses is viewed in the light of the attendant circumstances it is apparent that the verdict is flagrantly against the evidence. Since the abolition in this jurisdiction of the scintilla doctrine, the rule is that where a verdict must be set aside as being flagrantly against the evidence, the court will direct a verdict for the defendant on another trial should the evidence be substantially the same.

Many of the cases cited by plaintiff, such as McGill v. Louisville & N. R. Co., 114 Ky. 358, 70 S. W. 1048, 24 Ky. Law Rep. 1244 and Smallwood v. Ky. & W. Va. Power Co., 297 Ky. 202, 179 S. W. 2d 877, deal with the rule that one who has received money in a compromise of his claim must tender it back or return it in order to maintain a suit; and with the exception thereto, that no return of the money is necessary in order to maintain a suit where it is paid for loss of time, doctor bills, etc., and not as damages for injuries. But from the view we take of the instant case we do not reach that question. However, plaintiff leans heavily on Illinois Central R. Co. v. Vaughn, 111 S. W. 707, 33 Ky. Law Rep. 906, and Lax-Fos Co. v. Rowlett, 144 Ky. 690, 139 S. W. 836.

In the Vaughn case it is said that where there is gross inadequacy of compensation in a settlement "but slight additional evidence of fraud" is required to overturn it, thus inferring that the $100 paid in settlement was so inadequate as to indicate fraud. We have no such inadequacy in the case at bar. Plaintiff received $583.32 for a broken leg when both parties to the settlement were under the impression that he would soon be able to return to work and when the Company had borne plaintiff's medical bills of $515.

In the Lax-Fos case Rowlett was paid nothing in the compromise and the $107 consideration recited in the receipt represented wages paid after the injuries, together with medical bills. There were ample grounds

for Rowlett's believing the receipt signed was not in settlement of his injuries but represented only wages and medical attention received during his incapacity. In the instant case the evidence is clear and convincing that the settlement was in full of plaintiff's claim for injuries and that he so understood.

The judgment is reversed with directions to grant a peremptory instruction in favor of the Company should the evidence be substantially the same on another trial.