## Consolidated Products Co. v. Jackson.

December 7, 1948.

Doolan, Helm, Stites & Wood and T. C. Carroll for appellant.

Robert Hubbard and Dan Arnold for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Henry Jackson, appellee, having recovered $3000 in damages resulting from the death of his wife, Emma, by a judgment against Consolidated Products Company, appellant, the latter now brings us this appeal.

The company contends that the judgment is reversibly erroneous because (1) the trial court should have transferred this case to equity jurisdiction upon an issue relating to alleged fraud involved in a previous settle-

ment of this claim and because (2) the trial court should have directed a verdict for the company, since (a) fraud was not proven against the subject settlement and since (b) contributory negligence was proven against the deceased Emma as causing her death.

Emma, age seventy-five, was mortally injured under impact with the company's truck while she was walking across the main thoroughfare of New Haven's business district on the morning of October 5, 1946. Two days after her funeral, an adjuster for the company's insurance carrier, together with the company's Lebanon manager, called on Emma's surviving husband, Henry, age seventy-seven, at his rural home. There they procured his signature to an order directing the appointment of Emma's funeral director as her administrator. Forthwith, the administrator settled the entire death claim for the burial bill, the doctor bill and the administration cost, the total outlay being $442.75, which settlement would appear to be very grievous if there was legal liability or very gracious if there was none. Of the seven adult children of Emma and Henry, only one named Richard was called into counsel regarding any part of this administrative plan and settlement.

Although there was conflicting evidence relating to the question of whether or not any fraud was actually practiced to procure this administration and subsequent settlement, yet we find evidence for appellee tending to show that Henry was very frail in mind and body at the time in question; that he was too weak or too demoralized to attend Emma's funeral; that he did not remember the happenings of the occasion in question when he signed the order directing appointment of the administrator; that he, as well as his son Richard, had no education beyond ability to sign his own name; that he was unable to calculate Emma's age correctly; that the order for appointment of the administrator was made with definite understanding that the administrator would return to Henry in about three weeks for collaboration with him in a conclusion of final settlement of the claim.

Although there was conflicting evidence relating to the question of whether or not Emma was guilty of contributory negligence which caused her death, yet we

find evidence for appellee tending to show that Emma hesitated and looked both ways before she began to walk across the street on this occasion; that she had reached the middle of the street before she was hit; that the fatal truck was still thirty-five feet or more away from Emma when she neared the middle of the street as she proceeded in her purpose of crossing.

■ Did the trial court commit reversible error in having the issue of fraud determined by a jury? It seems that Henry alleged and then proved, as we have already indicated, some elements of fraud relating to the execution of the two controversial instruments of this case, viz., the order directing appointment of the administrator and the settlement agreement subsequently entered by the administrator. Henry made these allegations of fraudulent execution in his petition as amended. In doing so, he *anticipated* a defense, which more properly should have arisen by defensive pleading. However, we cannot see that the company's substantial rights were prejudiced by Henry's premature pleading of the asserted fraud. And, since we have held that where a release is pled and an attack made thereon on the ground of fraud in the execution, the issue is properly triable at common law, the same holding is now followed in the present case, notwithstanding Henry's premature pleading. See Hazelwood v. Woodward, 277 Ky. 447, 126 S. W. 2d 857.

■ Did the trial court commit reversible error in refusing to direct a verdict for the company? The company contends such error was committed because (a) taint of fraud was not proven against the two documents in question and because (b) contributory negligence was proven against Emma as causing her death.

Now, as we have already stated, the company smiled on Henry in a handsome way with this $442.75 settlement, if there was no probative indication of legal responsibility for Emma's death. On the other hand, the company beguiled Henry in a delusive way with this payment, if there was probative indication of legal responsibility. No man since Adam would take $442.75 for a good wife, even after frost had gotten in her hair and sparkles gotten out of her eyes. But, besides this, Henry was, at the time of the execution of these docu-

ments, wandering in the confusion of his new bereavement and in the darkness of his old illiteracy. This court has heretofore held that where the amount paid in a settlement is palpably inadequate, only slight additional evidence of fraud is required to overcome such a settlement. See Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S. W. 2d 423. Therefore, we believe Henry produced ample evidence of fraud on this trial to justify submission of his case to a jury for determination of that question.

Likewise, as we have already indicated, Henry produced evidence tending to show that Emma looked both ways before she stepped out in the traffic lane of the street, also tending to show that she proceeded several feet out in traffic's clear view before she was hit by this truck. The effect of such evidence, coupled with appellant's contrary evidence indicating that Emma, without looking, stepped out from the obstruction of parked vehicles right into this imminent and observable peril, is to leave reasonable minds of ordinary men in doubt as to what actually occurred and as to whether there was contributory negligence on this occasion. Such a situation undoubtedly demands the aid of that time honored group of men called a jury. We have held that the question of contributory negligence is generally one for a jury's solution, except where facts are undisputed or where but one conclusion can be drawn or where reasonable minds cannot differ, these latter situations being of a sort that is self-solving, leaving no question whatever for jury solution. See Reynolds' Adm'x v. Waggener, 271 Ky. 300, 111 S. W. 2d 647. Therefore, under the obviously conflicting evidence bearing on the issue of contributory negligence, as well as under the similarly conflicting evidence bearing on the issue of fraud, the trial court committed no error, we believe, in refusing to direct a verdict for the company.

And so, having carefully weighed in the balance all the asserted errors of this trial and having found them all wanting in such merit as to justify any reversal of the judgment, the same is now hereby affirmed.