EDWARD J. BABUREK, ADMINISTRATOR WITH WILL ANNEXED OF THE ESTATE OF JOSEPH FRANCIS PELLANT, APPELLEE AND CROSS-APPELLANT, v. JAMES J. SKOMAL, APPELLANT AND CROSS-APPELLEE.

127 N. W. 2d 731

Filed April 17, 1964. No. 35590.

McGowan & Troia, for appellant.

George H. Thompson and Robert P. Miller, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an action by Edward J. Baburek as administrator with will annexed of the estate of Joseph F. Pellant, deceased, against James J. Skomal for (1) false imprisonment, (2) conversion of personal property, and (3) the unlawful eviction of deceased from a leasehold estate. The jury returned a verdict for $4,500 on the second cause of action and a verdict for $500 on the third cause of action. Defendant Skomal filed a motion for a new trial. The trial court, after the hearing on the motion for a new trial, ordered a remittitur of $1,500 on the second cause of action as a condition to the overruling of the motion for a new trial directed to the second and third causes of action, and ordered, if the remittitur be not filed, that the motion for a new trial be sustained as to the second and third causes of action. The remittitur was filed. The defendant Skomal appealed.

Prior to March 31, 1953, the deceased was the owner of a lot and a two-story building located at 1249½ South Thirteenth Street in Omaha, Nebraska. On or about the above date the deceased sold and conveyed the property to the defendant Skomal, who has since operated the first floor of the building as a hardware store. As a part of the same transaction Skomal leased the second-floor living quarters without rent as long as deceased occupied it as his home, or until the death of deceased, or in the event of the destruction of the property. On March 31, 1959, the deceased was taken to a hospital, where he was treated for a decompensated heart and a mental condition. He was released from the hospital on April 23, 1959, and thereafter lived with his cousin, Mathilda Polan, until the middle of June 1959. He was thereafter removed to the St. Vincent's Home in Omaha where he remained until his death on May 6, 1960, at the age of 74 years. From the time he first entered the hospital on March 31, 1959, until his death, he never returned to his living quarters in the Skomal

property. On May 14, 1959, Edward J. Baburek was appointed conservator of the property of the deceased and, after the death of the deceased, was appointed administrator with will annexed of his estate.

At the close of plaintiff's evidence the plaintiff dismissed without prejudice his first cause of action for false imprisonment. The second cause of action was narrowed to the question of the value of a stamp collection belonging to the deceased, and whether or not defendant converted it to his own use. The third cause of action involved the issue of whether or not defendant unlawfully evicted the deceased from his living quarters and, if so, the rental value of the leasehold during the period of the unlawful eviction.

As to the second cause of action, the evidence shows that the deceased had lived all his life at 1249½ South Thirteenth Street, his parents having resided there before he was born. Deceased never married and in his later years was living there as a recluse, occupying his time caring for a number of cats and working with a stamp collection he had accumulated over a period of 40 or more years. His furniture was old and of little or no value. His quarters were dirty and unkept, and, according to the evidence, were those of a recluse as the term is generally understood. After the removal of deceased to the hospital, defendant found a key in the apartment and locked the door. On May 14, 1959, Baburek as conservator called on the defendant and gave him a copy of his appointment as conservator. It is the testimony of Baburek that he demanded possession of deceased's property and that defendant refused, stating that he felt he should retain its possession until everything was settled. Baburek and defendant did inspect deceased's quarters. The furniture was still there, together with the stamp collection. A close inspection of the stamp collection was not made on that day. In the latter part of July or the forepart of August 1959, Baburek, accompanied by Anton F. Ort, and one Lamm,

went to the quarters of the deceased to inventory the stamp collection. They listed 147 books of stamps and 4 or 5 large cartons of loose stamps. There was no inventory taken of the individual stamps, the evidence being that it would take days and possibly weeks to so inventory them. Baburek testified that he again demanded the stamps, the defendant refusing for the reason that deceased owed him money. At the time this inventory was made the stamp collection had been removed from the quarters of the deceased and was in a back room of defendant's store. As the stamp collection was inventoried, the stamp books were arranged in neat order on shelves in the back room. The action for the conversion of the stamps was brought on August 28, 1959. In early February 1961, Baburek and one George Thompson went to defendant's store and discovered that many volumes of the stamps were missing and the remainder was in complete disarray. On February 11, 1961, Baburek and Ort checked the stamps against the previous inventory and found approximately 50 volumes of postage stamps, described mostly as plate block mint condition stamps, to be missing. It was the testimony of Ort, who was himself an experienced stamp collector, that whoever took the missing stamps was an experienced stamp dealer or collector for the reason that the more valuable mint plate block stamps had been removed from the collection.

We point out in this case that no person had any knowledge of the number of stamps contained in deceased's collection, although one witness estimated that the number was probably between 10,000 and 20,000. No witness was able to value the individual stamps or to determine the accumulated value of individual stamp appraisals. Except for the loss of the stamps while in the custody of the defendant, this could have been done.

The plaintiff called one W. J. Mashek as a witness who testified that he had been engaged in the business of buying stamps for sale to stamp collectors for more

than 20 years. He was familiar with United States commemorative and mint plate block stamps, and many foreign stamps as well. He was familiar with those stamps that had value, of which the deceased's collection contained many. Mashek testified that defendant asked him, on a date beyond his recollection, to come to defendant's place and estimate the value of deceased's collection, which he did. He had no opportunity to count the stamps nor to appraise the stamps in accordance with the number and the individual value. After a cursory examination of 45 minutes to 2 hours, he offered defendant the amount of $1,800 for them. He testified further that in his opinion they could have been sold at wholesale to a stamp dealer for $2,500 and, in his opinion, they could have been sold at retail for $3,000. We think this evidence, under the circumstances, was sufficient to sustain a value of $3,000.

The witness Mashek testified concerning Scotts Specialized Stamp Catalog which is published annually and generally sold to stamp collectors and dealers. The catalog was not offered in evidence. The witness testified that it is not primarily a pricing or valuing catalog, but is merely a guide to those interested in the buying and selling of stamps. He testified that the value of a stamp depends upon its condition, its scarcity, and collectors' demand. The age of the stamp has a bearing upon its value but it is not an essential element of value. He testified that he had made use of Scott's catalog for more than 40 years. The 1959 issue of the catalog listed 1,122 regular standard issues of postage stamps. He indicated that he could determine estimated values from Scott's catalog. He testified that the number of stamps in the collection was a controlling factor, a fact about which he had no information. The witness testified further that the value of stamps varies in different localities depending upon the collectors' demand, and that new information might increase or reduce the indicated catalog value. He testified further that plate

block stamps are not carried in the catalog. On this foundation the court permitted the witness to answer that the catalog value of the stamp collection exceeded $6,000. There is no evidence that this was the market value of the stamp collection.

We think the trial court was in error in permitting the witness to give the catalog value as $6,000. In the first place, the witness had already testified to the market value at retail as being $3,000. In the second place, the witness had no knowledge of the number of each class of stamps, and the catalog gave him no aid in valuing mint plate block stamps. Without this information the estimate based on catalog information was pure speculation, a mere guess. The trial court recognized the speculative character of this evidence in considering the motion for a new trial when it required the plaintiff to remit $1,500, the amount of the judgment in excess of $3,000. We think the trial court was correct when it, on hearing the motion for a new trial, concluded that the opinion testimony of Mashek as to the catalog value of the stamps was pure speculation and improperly admitted.

The defendant testified that he never refused to place the stamp collection in the possession of Baburek; and that no demand was ever made upon him to do so. He testified further that he had no knowledge of anyone taking any of the stamps. Whether or not the defendant converted the stamp collection was a question for the jury.

The defendant contends that the evidence of value was not properly admitted under the general rule announced in Watkins v. Brunswick Restaurant Co., 123 Neb. 212, 242 N. W. 439, wherein it is said: "An opinion of an expert must be based upon facts, proved or assumed, sufficient to form a basis for an opinion, and cannot be invoked to supply the substantial facts necessary to support that conclusion."

The plaintiff relies on the rule announced in Jensen

v. Palatine Ins. Co., 81 Neb. 523, 116 N. W. 286, which holds: "* * * where the value of a stock of goods is a relevant fact, and no more accurate evidence is under the circumstances obtainable, the owner of such stock and witnesses acquainted with the value of the different articles of which such stock is composed, and who have observed the same for the purpose of estimating the value thereof, may give their opinion of such value." See, also, Borden v. General Ins. Co. of America, 157 Neb. 98, 59 N. W. 2d 141. The value of property that has become lost, destroyed, or for any reason is not available without fault on the part of the plaintiff is not ordinarily defeated because an itemized statement of the amount and value of the goods is not available. The law does not require mathematical certainty, but merely the best attainable evidence under such circumstances. When a witness is familiar with the value of the individual items being valued, has made some examination of them for the purpose of estimating their gross value, and has some knowledge of the quality and quantity of the items involved, he may give his opinion of their market value.

The evidence of Mashek that the retail market value of the stamp collection was $3,000 comes within the foregoing rule. He was familiar with the value of individual stamps, he had examined them for the purpose of estimating their value, and he had arrived at their value, even though at the time of trial he had little recollection of their quality and quantity. In a similar situation the court in Hazelwood v. Woodward, 277 Ky. 447, 126 S. W. 2d 857, said: "Appellant also complains because Samuel E. Simonson, a witness for appellee, was permitted to testify as to the size and value of the estate. We do not think there is much merit in this contention, as this witness states that he made an examination of the securities owned by Dr. John and made a list of them and formed his judgment as to the value of the estate at the time of making this list, although at the

time of the trial he did not remember the particular items of the estate."

On the other hand, the additional evidence of Mashek that the catalog value of the collection was in excess of $6,000 is incompetent under the foregoing rule. Mashek made no examination of the stamp collection for the purpose of appraising its catalog value and, of course, had not arrived at such value when he inspected it. Admittedly the catalog value was not the market value, even though it is an aid in arriving at market value. Admittedly the catalog gave no values of mint plate block stamps which constituted the most valuable stamps in the collection. Admittedly the witness was as familiar with Scott's catalog when he inspected and appraised the stamp collection at a market value of $3,000 as when he fixed a catalog value of $6,000. We submit that the catalog price testified to by Mashek was pure speculation and was based on conjectures that did not tend to produce the reasonable market value of the stamp collection. The admission in evidence of the catalog value of the stamp collection was error.

The plaintiff contends that the defendant unlawfully evicted the deceased. The evidence shows that when deceased went to the hospital the defendant obtained a key and locked the outer door of deceased's apartment. This constitutes no evidence of an eviction. The evidence further shows that deceased was afraid to return to the apartment. There is no evidence that the defendant participated in the creation of any such fear. It is a mere conclusion and does not support the contention that defendant evicted the deceased. There is evidence that defendant did move the property of deceased from his leasehold and take full possession of the rooms occupied by the deceased. The date on which the property was moved out of decedent's rooms is not accurately shown by the record. It was in decedent's quarters when Baburek was there on May 14, 1959. The property, or a part of it, had been moved out when

Baburek and Ort were there in July or August of 1959. Pellant, the deceased, died on May 6, 1960. The proof sustains a finding that deceased was dispossessed from July 1959, to May 6, 1960. The evidence of Baburek is that the rental value of the rooms was $50 per month. A tenant of defendant testified that he paid $16.25 per week as rent. We think the evidence sustains the verdict for $500 on the third cause of action.

The defendant assigns as error the giving of certain enumerated instructions. The instructions questioned are consistent with what we have heretofore said. We find no error in them.

We conclude that the judgment for $4,500 on the second cause of action is not supported by any competent evidence in the record. Such judgment is reversed and the cause remanded for a new trial. The judgment on the third cause of action is sustained by the evidence. The third cause of action was fairly submitted to the jury under proper instructions, and the plaintiff is entitled to the fruits of his verdict on that cause of action. The order granting a new trial on the third cause of action is therefore reversed and the cause remanded with instructions to reinstate the verdict and enter judgment for the plaintiff for $500 on the third cause of action. Each party is charged with his own costs on this appeal.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.