## Commonwealth et al. v. Dever.

Oct. 18, 1940.

M. L. Blackwell, Judge.

Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellants.

Clay & Clay for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

By resolution of the General Assembly adopted at its 1938 session, Acts 1938, c. 193, the personal representative of Alda Dever, deceased, was authorized to sue the Commonwealth of Kentucky and the State Highway Commission in the Henderson Circuit Court to recover such damages as may have been sustained by reason of the negligence of the State Highway Commission, its agents, servants, or employees. The resolution conferred like authority upon Mrs. Dever's two sons, Logan

and William Dever, but the present appeal involves only the correctness of a judgment for $4,500 rendered in an action instituted against the Commonwealth and the Commission by Mrs. Dever's administrator.

Her death was occasioned by the overturning of Logan Dever's automobile in which she was riding while it was being driven by his brother, William, westwardly on Highway 60 in Henderson County on July 31, 1937. The sole occupants of the car, a Dodge Coupe, were the mother and her two sons, and their destination was Rockport to attend the funeral of her brother. Logan had driven the car from Louisville the night before in response to a telephone message from his mother and had arrived at his mother's home near Hodgenville about 2 o'clock A. M. There he was joined by his mother and brother, the mother sitting between her sons and William taking the wheel. As the sole question which we deem it necessary to consider on this appeal is whether the appellants were entitled to a directed verdict, we shall adopt appellee's version of the manner in which the fatal accident occurred.

About 6 o'clock, the mother and her two sons had reached a point on Highway 60 a short distance from the Spottsville Bridge over Green River. It was a bright sunshiny morning and the highway which they had traversed was of smooth concrete, but beginning at a point about three-fourths of a mile east of the Spottsville Bridge, as a result of the heavy rains and flood in the preceding January and February, a number of dips and depressions had appeared in the pavement which recurred at intervals all along the fill to the bridge itself. The first dip which would be encountered by a car approaching from the east was apparently the worst and sagged about 18 inches in the center. About 30 yards west of the first dip was another dip, and thereafter they appeared at varying intervals with varying depths. The car in which Mrs. Dever was riding approached the dips at a speed of "around 35 miles an hour," and on striking the first dip was thrown from the road and over an embankment 25 or 30 feet in height. According to Logan Dever, his brother, when the car struck the first dip, "seemed to lose control of the car, and then he grabbed it and he pulled it back so hard he hit the other dip," after which the car left the road.

For the purposes of this case it may be conceded

that the "dips" were the proximate cause of Mrs. Dever's death, notwithstanding the fact that it was shown that they could be traversed safely at slow speeds, since the vital question is whether the Highway Commission failed to exercise ordinary care to warn drivers of the presence of dips and of the danger which they occasioned.

It was shown in evidence that the Commission had attempted to repair the road so as to eliminate the dips, and failing in that attempt, had advertised for bids for reconstructing the road where the danger existed. The bids for this work had been opened on the day before the fatal accident, and the contract was let to the successful bidder three days later. On March 13, 1937, the Commission had erected warning signs, and from August 12th to September 6th, following the accident, a watchman was employed to flag approaching traffic. During that period no accident occurred, although several had occurred previously. However, it was shown by the testimony that the dips could be safely crossed by an automobile at a speed of from 10 to 15 miles per hour, and it is not contended by appellant that it was the duty of the Commission to close the road to traffic. Neither is it contended that it was the duty of the Commission to post a watchman, provided "reasonable and timely warning" could have been and was given by signs sufficient in size and number to accomplish the desired end. Hence, it becomes necessary to determine the number and character of the signs actually maintained upon the occasion and at the location in question, and whether their maintenance as a matter of law constituted the exercise of ordinary care by the Commission.

It was shown by the testimony of the District Engineer of the Second Highway District, in which was included the County of Henderson, that thirteen signs were erected and that they consisted of "One large sign 4 x 4, one at the fill and east, and around the curve, which was 4 x 4 feet, and smaller signs 2 x 2 feet put up at all of the dips. Four near the dips with a sign, one ahead of each dip, for west bound and east bound traffic, which made eight, and the two large 4 x 4 signs makes ten, and three smaller signs on the hand rail of the Spottsville Bridge. * * * At the far end on the east end of the project around the curve there was a regular curve sign, then farther on back beyond the

curve was a sign marked 'Slow' ". However, since we are concerned only with the question of whether the case should have been submitted to the jury, we shall disregard the testimony introduced by appellants with respect to the warning signs and consider only that introduced by the appellee.

Neither William nor Logan Dever saw any signs as they approached the dips from east to west, but William Dever admits that coming back in the afternoon he saw two signs east of the first dip, one of which displayed the words "Danger—Dips in Road" and the other, the word "Slow". According to other evidence introduced by the appellee, the sign which displayed the words "Danger—Dips in Road" was 2 feet square and was located some 225 feet east of the first dip and a few feet from the right edge of the concrete roadway. The sign which displayed the word "Slow" was placed by the testimony of appellee's witnesses at varying distances east of the dips and on a curve, one of these witnesses stating that it was 948 feet east of the scene of the accident. There is much dispute among the witnesses as to where the signs, including those west of the dips, were located, and as to which signs were in place on the day the accident occurred; but resolving every doubt in appellee's favor and discarding from consideration the testimony of appellants' witnesses, it is established beyond controversy that the two signs east of the first dip and specifically described above were in place when the car occupied by Mrs. Dever approached the dips on the morning of July 31, 1937.

While it may be conceded that the word "Slow" by the side of the road at a curve might be construed as merely a warning of the existence of the curve, it is difficult to conceive how the large sign displaying the words "Danger—Dips in Road" could be considered an insufficient warning of the danger to be encountered. It is not suggested that this sign was placed too near the first dip to enable one observing it to slacken his speed sufficiently to avoid the danger. Appellee's whole case is predicated upon the idea that the signs referred to were not sufficient in size or wording to attract the attention of a driver along the highway. But the Highway Commission, even when the State has waived its immunity from suit, is not an insurer against accidents arising from defects or dangerous conditions on a public

road. Its duty is merely that of a private corporation or municipality subject to suit, namely, to exercise ordinary care to prevent injury from defects in the highway. We are of the opinion that it fully discharged that duty when it erected the signs referred to in the testimony of the District Engineer which we have quoted, and maintained a sufficient number of them to warn a driver exercising ordinary care for his own safety of the danger ahead in time to avoid injury from that danger. It follows that the Court should have sustained appellants' motion for a directed verdict.

Judgment reversed for proceedings consistent with this opinion.