# Mazyck v. Pennsylvania R. R.

March 12, 1943.

As Modified on Denial of Rehearing

June 25, 1943.

Raymond C. Arny and Carl J. Richard for appellant.

Doolan, Helm, Stites & Wood and Thomas J. Wood for appellee Robertson, Jr.

Robert F. Vaughan for appellee Pennsylvania R. R. and others.

OPINION OF THE COURT BY JUDGE SIMS—Affirming in part and reversing in part.

While a guest in the automobile of Charles M. Robertson, Jr., on May 23, 1940, the appellant and plaintiff below, Elizabeth Mazyck (then Robbins) suffered injuries to her spine as the result of an excessive jolt received when the automobile was driven by Robertson at

a speed of some 20 or 25 miles an hour over a temporary crossing of the Pennsylvania Railroad Company on Magazine Street in the City of Louisville. The railroad company and the city were engaged in a plan to eliminate grade crossings and the construction in question was being done by Henry Bickel Company. The petition alleged that the defendants railroad company, city and the contractor, negligently created a dangerous and unsafe crossing and negligently failed to give notice of its unsafe condition, and that the defendant Robertson drove his car over this crossing in a negligent manner, causing her injuries for which she sought to recover $26,992. The court held plaintiff had made a settlement releasing Robertson, and at the conclusion of her evidence a verdict was directed in favor of the other defendants, and she appeals.

Where the railroad crossed Magazine Street an overpass was in course of construction and a temporary track had been laid over the street. Magazine Street had been reconstructed with a concrete base but the asphalt had not been applied. At the point where the tracks crossed the street there was a skip in the concrete for 26 feet which was constructed of limestone treated with asphalt and rolled smooth and was called a "cold patch." The 11 feet east of the track had a grade or rise of 8 inches, while the 11 feet west of the track had a grade or rise of 11½ inches. Although the 4 feet of "cold patch" between the tracks was smooth and the tracks were flush with it, the steep grade made a "hump" causing automobiles to "buck" if not driven over it at a slow or very moderate rate of speed. There was a stop sign some little distance from this crossing on both the east and west sides and the evidence is conflicting as to whether or not red lanterns gave warning after dark of this steep crossing.

Robertson and the plaintiff, accompanied by her half-sister and her escort, had taken dinner at the Brown Hotel, after which they danced and they did not start home until about midnight. Plaintiff lived in the western part of Louisville and in calling for the girls, Robertson thinks he went over this crossing where the accident later occurred. Anyway, he had been over it that day and he was familiar with its condition. Robertson testified that in taking the girls home he drove over the crossing at some 20 or 25 miles per hour and hit it "terrifical-

ly hard.'' Plaintiff on the rear seat was thrown to the top of the car and in coming down injured her spine. She was immediately taken to the hospital where she was put in a plaster cast extending from her neck to her hips in which she remained for some time. Her injuries were severe and painful and resulted in hospital and doctor bills in the neighborhood of $500.

Robertson carried liability insurance which not only protected against his negligence but provided for medical treatment, not exceeding $500, of a guest injured in his car regardless of his negligence. He reported the accident to his insurance carrier who had its representative, Gordon B. Finley, call on plaintiff in the hospital on June 5th. Finley's testimony is to the effect that he informed the plaintiff that Robertson's policy provided for payment of her medical bills up to $500 regardless of his negligence, and that she then requested a settlement of Robertson's common law liability as soon as it could be made. He replied that he would have to complete his investigation before he could determine whether or not Robertson had been negligent. On his next trip to the hospital she again requested a settlement and offered to take $400. When Finley countered with $350 she accepted it and signed a receipt therefor in full settlement of her claim against Robertson whereby she released him and '' all other persons, firms and corporations'' from any and all claims she had against him or them by reason of Robertson's negligence. Her signature was attested by a nurse and an orderly, the latter certifying that she was ''sane, rational and not under the influence of drugs,'' as the insurance company required such attestation of receipts obtained from persons in hospitals.

Plaintiff filed suit against the railroad company, the city and Bickel Company to recover damages resulting from her injuries, but did not make Robertson a defendant. After her proof was in, defendants moved for a directed verdict. The court intimated he would sustain the motion, whereupon she dismissed her petition without prejudice, and within one year from the date of the accident filed the present action against Robertson as well as the three corporations made defendants in her first action. The petition after averring that the crossing was negligently constructed and no warnings were maintained as to its unsafe condition and that Robertson negligently operated his car in going over the crossing,

further alleged that due to her mental state caused by pain and opiates administered to her she did not understand the release she executed and was under the belief that she was acknowledging receipt of payment of the liability of Robertson's insurance carrier, and that the receipt was obtained through the fraud of the insurance company and through mistake on her part. She tendered the $350 received in settlement to Robertson or to his insurance carrier.

The answers of all defendants traversed the petition and then pleaded contributory negligence on the part of plaintiff, as well as the settlement, in bar of her cause of action. The trial judge was of the impression the pleadings raised an equitable issue as to whether or not the receipt was obtained by fraud and mistake, and sitting as a chancellor heard the evidence and decided that plaintiff was competent when the receipt was executed and no fraud was practiced, and the receipt and release barred her action against Robertson but not against the other defendants. It was stipulated that the evidence as to the three corporate defendants would be the same as heard on the former trial, whereupon the court directed a verdict in their favor.

Plaintiff insists that the court erred in treating the issue of fraud concerning the receipt as equitable and in not submitting it to the jury, relying upon Hazelwood v. Woodward, 277 Ky. 447, 126 S. W. (2d) 857; while Robertson relies upon such cases as Hunt v. Nance, 122 Ky. 274, 92 S. W. 6; Queen Ins. Co. v. Marks, 204 Ky. 662, 265 S. W. 30; Turner-Elkhorn Coal Co. v. Smith, 247 Ky. 112, 56 S. W. (2d) 545, as supporting the chancellor's holding that this is an equitable issue. As we interpret the pleadings, no issue was raised as to whether or not a settlement with the plaintiff was obtained by fraud, but only as to whether or not the receipt was so obtained. The receipt is but evidentiary of the settlement and plaintiff has sought to set aside the evidence of the settlement rather than the settlement itself. The petition avers she was mentally incapable of understanding what she was doing when she executed the receipt, but never alleged that she did not enter into an agreement to release Robertson nor that she did not understand the effect of such agreement. Robertson pleaded in his answer that the plaintiff agreed with his insurance carrier to accept $350 in full settlement of his liability to her, which

agreement was evidenced by the receipt she executed. In her reply plaintiff denied she made an agreement to release Robertson and did not plead that such an agreement was obtained by fraud. Therefore, it is unnecessary for us to determine whether or not the trial judge correctly decided the cancellation of the receipt was an equitable issue as plaintiff's obstacle is not to overcome the receipt but to overcome the settlement of which the receipt was only evidentiary, and no issue was made by the pleadings as to whether or not the settlement was obtained by fraud but only whether or not a settlement was made. The uncontradicted proof shows she made a settlement releasing Robertson and the trial judge was correct in so holding. If we should brush aside the technicality of whether or not the pleadings raised the issue that the release was obtained by fraud, yet it is not necessary for us to determine whether the alleged fraud was a legal or equitable issue, because the evidence conclusively shows no fraud was perpetrated on the plaintiff. Had the issue of fraud been submitted to the jury, as plaintiff so earnestly contends it should, and had the jury found in her favor thereon, we would have been compelled to hold that the verdict was flagrantly against the evidence.

The court properly directed a verdict in favor of Bickel Company since there was no evidence of negligence on its part. It executed a plan of the railroad and city and the negligent construction, if any, was not the manner in which the contractor constructed the crossing, but in the plan which created this "hump" and in not protecting it with proper warning signs or signals. It is the contention of the city and railroad that the city is not a guarantor of the safety of travelers on its streets, nor is it required to construct same in accordance with the very best plan; and if the plan of construction is not so obviously dangerous as would show a failure to consider or a purpose to misconstruct the work, the plan of the governing body of the city is conclusive, and the city is not liable for damages caused by reason of defective plans, citing City of Louisville v. Redmon, 265 Ky. 300, 96 S. W. (2d) 866, and the many authorities listed therein. This is the correct rule but it has no application to the facts in the instant case for the reason that the plan of the city and railroad related to the elimination of grade crossings by a permanent construction, and the temporary crossing had no relation to the general plan except for the moment.

A city is not generally liable for damages caused by an obstruction necessarily created in repairing a street if the work is not negligently done and travelers are warned of the obstruction. 43 C. J. 1019, Section 1797; Commonwealth v. Dever, 284 Ky. 150, 143 S. W. (2d) 1065. There was a direct conflict in the evidence as to whether or not the temporary crossing was reasonably safe and whether or not travelers were duly warned of it; therefore these questions should have been submitted to the jury under appropriate instructions.

Defendants argue that as Robertson had passed over the crossing just previous to the accident and knew of its existence, it was not incumbent upon them to warn him of something he already knew. It is the general rule that it is unnecessary to warn a person of a condition he knows to exist, Chesapeake & O. R. Co. v. Harrell's Adm'r, 258 Ky. 650, 81 S. W. (2d) 10. If this suit were being prosecuted by Robertson, he would come within the rule and defendants would owe no duty to warn him of the obstruction and he would be guilty of contributory negligence in driving over it at a speed of 20 or 25 miles per hour. But the negligence of Robertson cannot be imputed to plaintiff and will not prevent her from recovering against the railroad company and the city unless his negligence was the sole cause of the accident. Consolidated Coach Corp. v. Hopkins' Adm'r, 238 Ky. 136, 37 S. W. (2d) 1. A guest in an automobile observing danger is required to warn the driver thereof and may be guilty of contributory negligence in not so doing. Lexington Ice Co. v. Williams' Adm'r, 236 Ky. 318, 33 S. W. (2d) 14. Had the proper warnings been given of this crossing (concerning which there is a conflict in the evidence) plaintiff might have observed them and called Robertson's attention thereto and averted the accident.

To summarize, the trial court correctly adjudged Robertson was released from liability by virtue of the settlement his insurance carrier made with plaintiff, and correctly directed a verdict in favor of Bickel Company because no negligence was shown on its part, but erred in not submitting to the jury the question of whether or not the obstruction caused by the crossing was dangerous, and if so, whether or not it was duly protected by warnings to travelers. The judgment is affirmed in part and reversed in part for proceedings consistent with this opinion. Whole Court sitting.