**COMMONWEALTH of Kentucky, DEPART-MENT OF HIGHWAYS, Appellant,**

v.

**Edith BEGLEY, Appellee.**

Court of Appeals of Kentucky.

Feb. 28, 1964.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, John J. Blackburn, Covington, for appellant.

Brock & Brock, Daniel N. Brock, Lexington, for appellee.

WILLIAMS, Judge.

This is an appeal from a judgment of the Lee Circuit Court which (1) affirmed an award of the Board of Claims for damages sustained by appellee Begley as a result of the alleged joint negligence of the Commonwealth in maintaining a bridge near Beattyville, and (2) reversed a ruling of the Board crediting against the Board's award the partial payment by a co-tortfeasor of a separate judgment for the same harm.

On October 11, 1958, at about 9 o'clock a. m., the appellee, Edith Begley, and her son were passengers in an empty pickup truck operated by her husband who was driving south toward Beattyville over the North Fork Bridge. Approaching from the opposite direction was a truck loaded with approximately 800 concrete blocks and weighing 18 tons or more. The North Fork Bridge consisted of three spans—the main span over the river, and a "pony" span at each end. The "pony" span at the north end of the bridge and the main span were level; the "pony" span nearest Beattyville slanted 45 degrees upgrade from the bank to the main span. Because of this angle, motorists at either end of the bridge could not view the other end or ascertain approaching traffic until nearing the point where the angled "pony" span joined the main span. At that point, the two trucks met, stopped, and, as they began to pass, the angled "pony" span collapsed. Both trucks fell 50 feet to the bank below. The driver of the overloaded truck was killed. The appellee was severely and permanently injured.

The North Fork Bridge was a two-lane bridge built in 1906 of steel trusses and wood flooring and maintained by the Commonwealth. Signs posted at each end of the bridge read: "Load Limit 6 Tons."

The assistant director of maintenance in charge of bridges for the Highway Department testified that he had visually inspected the bridge both in January and in the summer of 1958 before its collapse. He considered the bridge safe for a gross capacity of 6 tons, but admitted that continued overstress of the bridge by loads exceeding 6 tons could render it unsafe even for smaller loads.

The evidence disclosed that the bridge was being used by trucks carrying heavy oil equipment, concrete blocks, coal, logs, bulldozers, and other heavy loads exceeding the posted load limit. During the summer of 1958, a delegation from Lee County, including the County Judge and other officials, visited the Commissioner of Highways and complained about the unsafe condition of the bridge and the heavily loaded traffic crossing it.

Appellee first sued Claude Compton, the owner of the truck overloaded with con-

creҍε blocks, and obtained a judgment of $66,000, of which $12,500 has been paid.

In a later action before the Board of Claims, pursuant to KRS 44.070 et seq., appellee sued the Commonwealth for negligently failing to maintain the bridge in a reasonably safe condition. The Board found the Commonwealth jointly negligent with Compton, awarded appellee $10,000, and credited against the $10,000 award the $12,500 paid by Compton, thereby preventing any recovery against the Commonwealth. On appeal to the Lee Circuit Court, the joint negligence of the appellant was affirmed but the credit of damages was reversed, permitting recovery of the $10,000 award from the Commonwealth.

The Commonwealth contends (1) that it was not negligent or (2) if so, that the $12,500 paid by Compton must be credited against the $10,000 award by the Board of Claims.

■ In general, negligence is conduct involving an unreasonable risk of harm to others. It includes a failure to act where, under the circumstances, a reasonable man would do so. Restatement, Torts, sections 284, 289 (1934). To determine whether conduct creates such an unreasonable risk of harm as to be negligent, the likelihood and gravity of possible injury to others must be weighed against the utility of such conduct. Harper & James, Torts, vol. 2, section 16.9, p. 928, et seq., (1956); Prosser, Torts, section 30, p. 119, et seq., (2 ed. 1955).

■ With respect to defective or hazardous conditions of the highways (which include bridges), the duty of the Commonwealth, as well as private corporations and municipalities, is to exercise ordinary care to keep the highways under its charge in a reasonably safe condition for public travel. Shrader v. Commonwealth, 309 Ky. 553, 218 S.W.2d 406 (1949); Commonwealth v. Dever, 284 Ky. 150, 143 S.W.2d 1065 (1940); Louisville & Nashville R. Co. v. Muncey, 229 Ky. 538, 17 S.W.2d 422

(1928); Town of Paintsville v. Commonwealth, 21 Ky.Law Rep. 1634, 55 S.W. 915 (1900). Of course, the Commonwealth is not an insurer of the traveling public. Commonwealth Dept. of Highways v. General & Excess Ins. Co., Ky., 355 S.W.2d 695 (1962); Commonwealth Dept. of Highways v. Young, Ky., 354 S.W.2d 23 (1962). But the liability for hazardous conditions of the highways does include situations where the danger is brought about by third persons if the agency responsible for maintaining the highway or street has actual or constructive knowledge of the unsafe conditions. Criswell v. City of Jackson, 257 Ky. 222, 77 S.W.2d 622 (1935); City of Pineville v. Lawson, 225 Ky. 542, 9 S.W.2d 517 (1928).

■ Under the facts of this case, the Commonwealth exerted little if any care. It took no action to remedy, warn or guard against the hazardous situation which had resulted from a combination of known violations of the posted load limit and an obstruction of view across the two-lane bridge from either end. The traveling public was prevented from discovering approaching traffic until part of the bridge had been traversed. The probability that a vehicle driven with due care within the load limit would meet an approaching vehicle exceeding the load limit, and that the bridge would collapse, was so great that a failure to warn or guard against the hazard was negligent conduct. The risk was foreseeable. The negligence of the Commonwealth rests not in the creation of the hazardous condition, but in permitting the situation to continue without attempting to remedy, warn, or guard against the danger.

■ The appellant argues that the posting of low load limit signs as authorized by KRS 189.230 fulfills its duty to exercise ordinary care. Adequate warning of hazardous conditions in the highway system may be an exercise of ordinary care. We have some doubt whether load limit signs alone would have been sufficient warning at the North Fork Bridge had no violations

of the load limit been expected. In addition to the ambiguous meaning of the language "Load Limit 6 Tons," there would have been some likelihood that two trucks, with a combined weight exceeding 6 tons but each weighing less than 6 tons, would meet on the bridge and cause an overstress or collapse of it even though both drivers had exerted ordinary care for their own safety. Since that question does not arise under the specific facts of this case, it is sufficient to say that the type of warning given by the load limit signs did not remedy, warn or guard against the hazardous situation at the North Fork Bridge; the message was unrelated to the danger permitted to exist there.

The Commonwealth urges that the negligence of the driver of the overweight truck was the proximate cause of appellee's injuries. As we view it, the negligence of the truck driver was a foreseeable intervening force within the scope of the original risk. Such an intervening force will not supersede the concurrent negligence of the Commonwealth. Harper & James, Torts, vol. 2, section 16.12, p. 940, et seq. (1956); Prosser, Torts, section 49, p. 268 (2 ed. 1955). In Louisville Home Telephone Co. v. Gasper, 123 Ky. 128, 93 S.W. 1057, 9 L.R.A.,N.S., 548 (1906), this Court held that the negligent maintenance of a guy wire extending 18 inches into an alley was not superseded by the intervening negligence of the driver of a wagon which fell upon the plaintiff after striking the guy wire. As was noted in the Gasper case, supra, 93 S.W. at p. 1059:

"* * * So, the defendant is clearly responsible where the intervening causes, acts, or conditions were set in motion by his earlier negligence, or naturally induced by such wrongful act or omission, or *even, it is generally held, if the intervening acts or conditions were of a nature, the happening of which was reasonably to have been anticipated*, * * *. An act or omission may yet be negligent and of a nature to charge a defendant with liability, although no injuries would have been sustained but for some intervening cause, if the occurrence of the latter might have been anticipated." (Emphasis added.)

See State Contracting & Stone Co. v. Fulkerson, Ky., 288 S.W.2d 43 (1956); Miles v. Southeastern Motor Truck Lines, 295 Ky. 156, 173 S.W.2d 990 (1943); City of Louisville v. Hart's Adm'r, 143 Ky. 171, 136 S.W. 212, 35 L.R.A.,N.S., 207 (1911); Watson v. Kentucky & Indiana Bridge & R. Co., 137 Ky. 619, 126 S.W. 146, 129 S.W. 341 (1910); Snydor v. Arnold, 28 Ky.Law Rep. 1250, 122 Ky. 557, 92 S.W. 289 (1906).

There is no evidence to indicate that the appellee or her husband was contributorily negligent or that the danger could have been discovered had they exercised extreme care for their own safety.

 Appellant's second contention that the $12,500 paid by Compton should be credited against the $10,000 award by the Board rests upon a misinterpretation of the applicable principles of damages. Although joint or concurrent tort-feasors may be jointly or severally liable, only one full satisfaction of damages for a single harm may be recovered by the injured party. Therefore, the payment of any sums by co-tort-feasors should be credited against the value of a full legal compensation. The remainder after such credit is the extent to which co-tort-feasors may be liable. This Court's position was clearly discussed in United Society of Shakers v. Underwood, 74 Ky. (11 Bush) 265 (1875), wherein it was noted:

"* * * the plaintiff may maintain separate actions and recover separate judgments against joint trespassers, and may elect to take the largest sum assessed, or to proceed against the solvent defendant, or in case no one of them is able or can be compelled to pay the whole of the judgment rendered against him, may accept part satisfaction from one and still look to the

others for such *balance* as may be necessary to give him *full* legal compensation for the wrong suffered * * *." (Emphasis added.)

The remainder of damages due, after crediting Compton's payment of $12,500 against the full legal compensation of $66,000, exceeds the $10,000 limit of liability of the appellant. Accordingly, the appellant is liable for the full amount of $10,000.

The judgment is affirmed.

MONTGOMERY, J., dissenting.